LIPE, et al. *v.* SOUTHER, et al.

No. 39680 May 23, 1955 80 So. 2d 471

*Denton & Gore,* Marks, for appellants.

*Holcomb & Curtis,* Clarksdale; *Eugene Thompson, Ben M. Caldwell,* Marks; *W. R. Sheppard,* Hendersonville, North Carolina, for appellees.

ETHRIDGE, J.

This is a suit on appeal from the Chancery Court of Quitman County to impress a constructive trust upon certain lands in Quitman County which were conveyed to appellee Phyllis Lipe Souther by her mother and father, T. E. and Carrie Lipe, in a deed dated May 5, 1940. The bill is not based upon fraud or undue influence. It is grounded upon an alleged oral agreement by the grantee Phyllis Souther, with her two brothers, Roy E. Lipe, Sr. and Carl Lipe, and with the grantors, that she would hold one-half of the property in trust for her brother, Roy E. Lipe, Sr., and upon an alleged confidential relationship.

In 1940 and for many years before the date, T. E. Lipe was the owner of a large amount of farm land in Quitman and Tallahatchie Counties. He had three children, Roy E. Lipe, Sr., Carl Lipe and Phyllis Lipe Souther. From around 1923 to 1936 the land was owned in

varying proportions by Roy Lipe, Sr., Carl Lipe, and their mother, Carrie Lipe. At about the latter date a deed of trust on the property was foreclosed by an insurance company, and subsequently in 1937 or 1938, T. E. Lipe purchased the lands in question in his own name. He then began operating the farm as sole owner, although for most of this period his children, except Phyllis, assisted him in managing it, under the name of an unincorporated association or partnership known as Lipe Planting Company.

On May 5, 1940, T. E. Lipe and wife, Carrie E. Lipe, executed the warranty deed which is the subject of this suit. Complainants assert a constructive trust for their benefit in part of the lands conveyed to Phyllis. The deed was not filed for record until March 11, 1941. The deed recites, "In consideration of love and affection for our children and grandchildren, and in order to effect, during our lifetime, what we deem to be a proper division of our lands," the grantors convey their property as follows: The deed first conveys to Phyllis Lipe certain described lands in Quitman County. It then states: "Also unto our daughter Phyllis Lipe the lands in Quitman County, Mississippi described as follows," describing certain other lands. The deed then conveys to Carl Lipe certain described lands.

The fourth granting part of the deed next conveyed to Phyllis, Carl and Roy Lipe, Sr. "as trustees, share and share alike" certain described lands, "and any and all other lands owned by us, or either of us in Tallahatchie County, Mississippi excepting the lands heretofore conveyed to our son, Carl Lipe." Next the deed reserved a life estate in the grantors to the lands conveyed to the three trustees, with a right of survivorship in the surviving grantor for the period of the life estate. It then provides:

"It is intended to hereby vest, and we do now vest and convey, the remainder in fee simple in our children

as herein set out; provided, however, our son, Roy E. Lipe, Sr., is to have and to hold the land herein conveyed to him upon trust, and use herein limited and declared, to-wit:

"For a period of ten (10) years from the date the remainder in fee vests, to farm, rent, lease, convey, sell, mortgage and do all things as if belonging to him, but all shall be done without the necessity of accounting therefor for the use of, and all rents, profits, proceeds and income shall be applied to the use of his children, Roy Edwin Lipe, Jr., Billy Ray Lipe and James Webb Lipe; and at the end of said term, if not previously conveyed, to convey the interest in said land herein conveyed to him to the said Roy Edwin, Jr., Billy Ray Lipe and James Webb Lipe, share and share alike.

"If Roy E. Lipe, Sr., shall have died before the expiration of the term of the trust herein created for Roy Edwin Lipe, Jr., Billy Ray Lipe and James Webb Lipe, then the trust shall be administered by a trustee appointed by, and acting under the direction of, the Chancery Court of Quitman County, Mississippi, and grantors nominate their son, Carl Lipe, as said trustee, if he then be living."

The remainder of this deed of May 5, 1940, states that as a further consideration for the conveyance, the grantees assume and promise to pay all indebtedness owing by the grantors and secured by valid liens against the property, especially the debt owed to the Prudential Life Insurance Company of America. The deed states: "Said indebtedness and taxes shall be assumed and paid by the respective grantees herein in proportion to the present value of the lands herein conveyed to each of the respective grants," and if the grantees should disagree as to their part of the indebtedness, the proper amount to be paid "by him or her" could be determined by the chancery court "the same as in proceedings for the partition of lands jointly owned." Apparently the

debt to the Prudential Insurance Company, which was assumed by the grantees in this 1940 deed, including defendant Phyllis Lipe Souther, was for a substantial sum.

Roy E. Lipe, Sr., a son of Mr. and Mrs. T. E. Lipe, had three children: Roy E. Lipe, Jr., and James Webb Lipe, complainants in the chancery court, appellants here, and his other son, Billy Ray Lipe, was a defendant, appellee here.

Less than a year after he had executed the deed of May 5, 1940, and on January 6, 1941, T. E. Lipe made his last will and testament. By it he devised and bequeathed to his son Carl Lipe all of his stock in certain corporations, and all of his personal property which he should own at his death. He left the balance of his estate to be equally divided among his heirs. T. E. Lipe died in August, 1944. His son, Roy E. Lipe, Sr., died in March, 1949. On December 5, 1950, defendant Phyllis Lipe Souther conveyed to Billy Ray Lipe a portion of the lands which had been conveyed to her by her mother and father on May 5, 1940, being the first described lands in that deed. The present suit was filed on May 8, 1953, by two of the sons of Roy E. Lipe, Sr., namely, Roy E. Lipe, Jr. and James Webb Lipe. Defendants were Phyllis Lipe Souther, their aunt, Carrie E. Lipe, their grandmother, Carl Lipe, their uncle, Billy Ray Lipe, their brother, and Eugene Thompson, trustee in a certain deed of trust on the property. The bill charged that their grandfather, T. E. Lipe, before he executed the deed of May 5, 1940, had decided to divide his lands approximately equally beween his three children; that it was agreed with the children to do this, and the deed was executed for that purpose; that at this time one of the sons, Roy E. Lipe, Sr., was heavily in debt with numerous judgments against him, and he was sick both physically and mentally; that for these reasons none of the family thought that it would be "good judgment" to vest title to any property in Roy E. Lipe, Sr., so T. E.

Lipe conveyed to Phyllis two of the three shares of land and a two-thirds interest in the personal property, with one of the two shares of land and one-third of the personal property to be held by her in trust for the use and benefit of her brother, Roy E. Lipe, Sr. It was charged that this was the agreement in fact, and that Phyllis was holding that one share for the benefit of her brother and his heirs, two of whom were the complainants. Hence the bill prayed that the court decree that the complainants were the owners of a two-thirds interest in one-half of the lands conveyed to Phyllis, that Phyllis held the land in trust for that purpose, and that she be required to account to complainants therefor.

In her answer Phyllis denied that there was any agreement or trust, and averred that the property was deeded to her absolutely and completely for her own use and benefit. One of the grantors in the 1940 deed, Mrs. Carrie E. Lipe, a defendant, in her answer denied that there was any trust, and averred that the conveyance to Phyllis was unencumbered with any such trust. Defendant Billy Ray Lipe, the brother of complainants, and the other heir of Roy E. Lipe, Sr., denied the allegations as to a trust and averred that the property described in the first portion of the 1940 deed was conveyed to him by Phyllis on December 5, 1950.

 █ The complainants then offered their evidence, consisting of the testimony of four witnesses and certain documentary evidence. Defendants moved to exclude complainants' evidence and to dismiss the bill, for the reasons, first, that complainants had wholly failed to prove any trust, and, second, that if so, the same was barred by the ten-year statutes of limitations, Code of 1942, Sections 746 and 710. The opinion of the chancery court first held that the suit was barred by these statutes, but further stated that the lands conveyed by the 1940 deed to Phyllis were conveyed to her in fee simple without any express trust stated therein; that the

testimony of complainants "falls far short of creating within this instrument a trust;" and that complainants offered no clear and convincing evidence to establish any kind of a trust. The final decree accordingly dismissed the bill of complaint with prejudice. On appellee's motion to dismiss the bill, the test is whether appellants' evidence and all reasonable inferences to be deduced therefrom established a constructive trust by clear and convincing evidence. Partee v. Pepple, 197 Miss. 486, 502, 20 So. 2d 73 (1944); Griffith, Miss. Chancery Practice (2d ed. 1950), Sec. 584, p. 615. Because of our disposition of the case on the other issue, we do not reach the question of the statutes of limitation.

Appellants do not contend, and there is no evidence to indicate, that Phyllis was guilty of any fraud or undue influence in reference to the 1940 deed from her father. However, it is argued that Phyllis was in a confidential relationship with her father and brothers at the time of the deed; that by her conduct and acquiescence after 1940 and until a time following the death of Roy, Sr. in 1949, she accepted the trust and did nothing to indicate that she did not recognize it; and that the evidence shows that she agreed to hold one-half of the property deeded to her in trust for her brother Roy.

█ █ ██ We have carefully examined the record, and are of the opinion that the evidence wholly fails to establish a constructive trust. The testimony of both of the complainants is of no substantial probative value on the issues. They both testified that it was their "understanding" that one-half of the land deeded to Phyllis was in trust for their father. Appellants' testimony did not show that the conveyance to Phyllis was made at her suggestion or request, or that she in any manner induced it, or that it was made by the grantors with any understanding, express or implied, that the grantee would hold the property for the benefit of the heirs, nor is there any proof that Phyllis by any act, word, or deed, ex-

pressly or impliedly led T. E. Lipe to believe that she would hold one-half of the land for the benefit of Roy.

The same observations are pertinent to the testimony of Carl Lipe, upon whom appellants' case depended. He said that he and his brother Roy discussed all of the features of the proposed deed with their father for some time before 1940; that there was a position of confidence between him, Roy, Phyllis and his father, and he knew that it was intended that Phyllis would hold the land in trust for Roy. However, it is undisputed that Phyllis was not present when the deed was executed in May 1940. She was living in North Carolina and had been in that state for at least several years before that date. Carl stated that there was no fraud or undue influence on the part of Phyllis. It was "indeterminate" as to when she was to convey to Roy his part of the land. When Roy wanted his part of the property back he could get it, but "it was up to him." The creation of the trust was Roy's decision. Carl admitted that he did not know what was in his father's mind when he executed the deed. He was not present when it was executed. He expected that his father would convey a portion of the lands to Roy. In 1944 Carl signed an extension agreement of an existing deed of trust on the property, which recited the fact of the 1940 deed, and that the conveyances of the lands to Phyllis were "in fee simple." Carl identified certain memoranda in his and Roy's handwriting, which they had written before the 1940 deed, while they were working out its details at the request of their father. But he conceded that the memoranda were incomplete and did not cover all of the property. They do not indicate the grantor's intent when he executed the deed. Carl remembered a conversation with his father and Roy about how his father planned to divide the property, in which he stated that Roy's share was one-fourth. Although he claimed it was an "express agreement," Phyllis was not personally in-

volved in it, but Carl said she was represented by Roy. He did not know whether Roy had any power of attorney to represent her.

■■■ This testimony must be considered in the light of the well-established rule that the character of evidence necessary to prove the existence of a parol constructive trust must be clear and convincing. The proof must establish the facts and circumstances giving rise to the trust with an extraordinary degree of certainty and clarity. Stovall v. Stovall, 218 Miss. 364, 67 So. 2d 391 (1953). These principles are a reflection of the purpose of the Statute of Frauds, Code of 1942, Sec. 269, which requires declarations of trust to be in writing, except where the trust arises by implication of law out of a conveyance of land. ■■■ In Coleman v. Kierbow, 212 Miss. 541, 54 So. 2d 915 (1951), the rules pertinent to determining whether a constructive trust exists were considered in detail. Although it was recognized that such a trust may be proved by oral testimony, it was said that there is danger in such evidence and it must be viewed with caution. An enforceable trust will not arise from the mere breach of an oral promise to hold land in trust. There must be conduct influential in producing the result, and but for which such result would not have occurred, amounting, in the view of a court of equity, to fraud in order to save the case from the Statute of Frauds.

The chancellor was correct in dismissing the bill. There is no evidence that the conveyance of the property to Phyllis was made at her suggestion or request, or that she in any manner induced it. There is no clear and convincing evidence that the conveyance was executed by T. E. Lipe with any understanding, express or implied, that the grantee would hold one-half of the land for the benefit of Roy, nor that Phyllis by any act, word or deed, expressly or impliedly, led the grantors to believe that she would hold the property for the benefit

of her brother. And there is no claim of fraud or undue influence. In Stovall v. Stovall, supra, this Court reversed a finding of the chancellor that there was a constructive trust. But the evidence in favor of a trust was considerably stronger there than in the instant case.

However, appellants contend that Phyllis was in a fiduciary relationship with her father and her two brothers, and therefore the court should imply fraud in law. This argument is based upon Section 44, Restatement of the Law of Trusts, which was quoted with approval in Coleman v. Kierbow, supra. That section states that the transferee holds the interest upon a constructive trust if, but only if, "(b) the transferee at the time of the transfer was in a confidential relation to the transferor." But the evidence is not sufficient to show the existence of a confidential relation between Phyllis and her father, in the sense which would warrant an inference of overreaching. Moreover, the mere existence of such a relationship is not enough, even if it existed. As was said in Summer v. Summer, No. 39,665, decided May 9, 1955, "It is the relationship plus the abuse of the confidence imposed that authorizes a court of equity to construct a trust for the benefit of the party whose confidence has been abused." And appellants' testimony fails to show that Phyllis was guilty of any abuse of confidence.

The fourth granting part of the 1940 deed expressly conveyed a contingent interest in trust for appellants and their brother. This would tend to negative an intent to create as to another portion of the property conveyed in the same instrument an implied trust. The testimony does not show that T. E. Lipe when he executed the deed had the intention to convey part of the land to Phyllis in trust, and there is no evidence to show that she ever promised her father that she would carry out any such intention, or that Phyllis ever suggested that any lands to be owned by Roy should be placed in

her name. Of course we do not know Mr. Lipe's intentions at the time he executed the deed, but perhaps the long continued, bad health of Roy, Sr., as well as other personal considerations, including the trust created in the fourth granting clause of the deed, entered into his considerations in executing it as it was written. At any rate, we think that the chancery court was correct in concluding that appellants did not prove by clear and convincing evidence the essential elements necessary for the creation of a constructive trust. It was quite liberal in the admission of testimony offered by appellants, and we find no error in those instances where objections to evidence were sustained.

Affirmed.

*Roberds, P. J.,* and *Lee, Holmes* and *Arrington, JJ.,* concur.