# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 1998-CA-01787-SCT

*IN THE MATTER OF THE ESTATE OF RICHARD D. HORRIGAN, DECEASED: EUNICE HORRIGAN, EUNICE LEBLANC AND ROY HORRIGAN*

*v.*

*CHRISTINE LADNER AND THEODORE BILBO, JR.*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/16/1998 |
| TRIAL JUDGE: | HON. THOMAS WRIGHT TEEL |
| COURT FROM WHICH APPEALED: | HANCOCK COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANTS: | LUCIEN M. GEX, JR. |
| ATTORNEY FOR APPELLEES: | CARTER O. BISE |
| NATURE OF THE CASE: | CIVIL - WILLS, TRUSTS AND ESTATES |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND REMANDED IN PART - 12/16/1999 |
| MOTION FOR REHEARING FILED: | 12/29/99; denied 3/16/2000 |
| MANDATE ISSUED: | 3/23/2000 |

**BEFORE PRATHER, C.J., BANKS AND McRAE, JJ.**

**McRAE, JUSTICE, FOR THE COURT:**

¶1. A judgment by the Hancock County Chancery Court awarding an interest in a house is partially affirmed in that we affirm the constructive trust of $22,178[1] plus interest from the date the last payment was made by the decedent's grandchildren, but we reverse as to awarding any interest in the house and property.

¶2. This case is a perfect example of how at times, blood is not thicker than water. This Court is presented with the challenge of determining whether an alleged agreement between several family members some ten years ago should be enforced. The agreement at issue was between Richard D. Horrigan, II ("Horrigan") and his two grandchildren ("Christy and Ted"). The agreement provided that if Christy and Ted invested their funds into the renovation of Horrigan's house and garage they would be willed the entire property after both he and his wife died. The widow of the deceased, and the will, provide otherwise. Finding that there was in fact such an agreement and that Christy and Ted invested $22,178 into the renovation project, we affirm the chancellor's finding that the Horrigans are estopped from denying such and a constructive trust must be declared. However, as the law does not permit specific performance in such circumstances, we reverse the findings of the chancellor that Christy and Ted are entitled to recover any interest in the house or apartment. The Horrigans are instead responsible to Christy and Ted for the entire $22,178 plus interest in

order to have the trust dissolved. As life tenant to the property, Sue Horrigan may realize the rents of the house if she so chooses up to the amount of $600 per month retroactive to November 1998.

## I.

¶3. On March 5, 1996, Richard D. Horrigan II ("Horrigan") died testate. Horrigan was survived by his wife, Eunice Landry Horrigan ("Sue"), and by his children, Roy Horrigan, Eunice Horrigan LeBlanc and Richard D. Horrigan, III, (son from a previous marriage), and two grandchildren, Christine Bilbo Ladner and Theodore Bilbo, II (children of Jewel Horrigan Bilbo).

¶4. On September 20, 1996, Horrigan's daughter, Eunice LeBlanc, filed a Petition for Probate of Will and Letters Testamentary in the Chancery Court of Hancock County, Mississippi. The will named Sue as the legatee of all of his estate. The home and remaining land not granted to Sue was to be divided among the following heirs of Jewel Bilbo; one-half to be given to Christine Ladner and her three children, Anthony Ladner, Dillon Ladner and Jewel Ladner (share and share alike); and one-half to be given to Ted Bilbo, Jr., and any children he might have had at the time of Horrigan's death. The remaining assets including, but not limited to, the contents of the home were to be divided equally with Sue receiving one-half, Christine Ladner and her three children receiving one-fourth, and Ted Bilbo, Jr. and any children he might have had at the time of Horrigan's death, receiving one-fourth. The will further provided that if Sue predeceased Horrigan (which she did not), a portion of his homestead property would be left to his daughter, Eunice LeBlanc.

¶5. On October 25, 1996, Christine Ladner filed a Caveat to Probate alleging that the will was in fact not the last will and testament of Horrigan and that it was executed at a time during which the decedent lacked the requisite mental capacity to make a will, or alternatively, that the will was the product of undue influence.

¶6. Nevertheless, four days later the will was admitted to probate and Letters Testamentary were issued under the will to Eunice LeBlanc. On November 12, 1996, Christine Ladner ("Christy") and Theodore Bilbo, Jr. ("Ted"), filed a Motion to Vacate the Order Admitting the Will to Probate in Common Form for failure to consider Ladner's previously filed caveat.

¶7. On November 27, 1996, Eunice LeBlanc filed a Motion for Direction from the Court. As the executrix under the will, LeBlanc notified the court that no rent was being collected on the home or real property which was occupied by the grandchildren and therefore no income from the assets was being earned.

¶8. The Chancery Court, on December 23, 1996, issued an order on setting aside Horrigan's will to probate and appointed the Chancery Clerk of Hancock County, Mississippi, Timothy Kellar, as Administrator of the Estate.

¶9. Six months later, on May 16, 1997, Christy and Ted filed a Petition for Specific Performance and Other Relief. The two claimed that in 1989 the decedent Horrigan had promised to leave realty in Bay St. Louis, Mississippi, to them in his will if they would invest funds for the completion of an apartment and for improvements to the existing house. Ted and Christy argued that a fiduciary duty was owed to them by Horrigan which was breached. Sue, Eunice and Roy each filed Answers and Affirmative Defenses to Petition for Specific Performance on June 17, 1997, denying the existence of any such contract and requesting the court assess reasonable rent against the grandchildren for the occupancy of the property since the date of Horrigan's death.

¶10. In the course of discovery, it was revealed that the Horrigans had conveyed one of the two lots making up the property at issue to Eunice LeBlanc. As a result, on October 30, 1997, a Petition to Set Aside Conveyance was filed. The petition was later answered and Amended Petition for Specific Performance and for Other Relief was filed on August 10, 1998, alleging that a constructive trust was effectively created and they were entitled to relief in the form of quantum meruit or for goods and/or monies had and received. Before proceeding to trial, Ted and Christy withdrew the previously filed caveat, and the court ordered the will originally filed for probate to be reinstated.

¶11. The cause was tried on October 19 and 20, 1998, in the Chancery Court of Hancock County, Mississippi, before the Honorable Thomas W. Teel, Chancellor. Chancellor Teel entered his judgment in the case on November 16, 1998, granting the Petition for Specific Performance, setting aside the conveyance to Eunice LeBlanc, and directing that Ted and Christy pay rent at $600 per month for the house from the day of the judgment, but not the apartment.

¶12. A Notice of Appeal was filed from the Judgment by Sue, Eunice and Roy Horrigan and a Cross Appeal was filed by Christy and Ted. The court thereafter granted the Petition for Specific Performance and directed the Estate of Richard D. Horrigan to convey parcels A and B to Christy and Ted, reserving a life estate for Sue Horrigan. The estate was held to be estopped from collecting any past due rents for the use of the property. However, Sue was allowed to either move into the apartment or allow Christy and Ted the use of it for free or for a rent of up to $600 per month.

## II.

¶13. An appellate court employs a limited standard of review on appeals from the chancery court. *Reddell v. Reddell*, 696 So.2d 287, 288 (Miss.1997). We will not disturb the findings of the chancellor unless he was manifestly wrong, clearly erroneous, or applied an erroneous legal standard. *Goode v. Village of Woodgreen Homeowners Ass'n*, 662 So.2d 1064, 1070 (Miss.1995). If a chancellor's findings are supported by substantial, credible evidence, this Court will not reverse. *Branton v. Branton*, 559 So.2d 1038, 1042 (Miss.1990). With regard to issues of fact as to which the chancellor did not make a specific finding, this Court is required to assume that the chancellor resolved all such factual issues in favor of the appellee. *Bryant v. Cameron*, 473 So.2d 174, 179 (Miss.1985).

## III.

### I. DID THE TRIAL COURT ERR IN HOLDING THAT DECEDENT RICHARD HORRIGAN EXECUTED A HOLOGRAPHIC WILL AND THAT THE APPELLANTS WERE EQUITABLY ESTOPPED FROM ASSERTING THE STATUE OF FRAUDS WITH REGARD TO SAID WILL?

¶14. The Chancery Court of Hancock County, Mississippi, sitting as fact finder, and having the opportunity to observe the demeanor of the witnesses, was convinced an oral agreement did take place between Horrigan and Christy and Ted. By the terms of that promise, Christy and Ted were to invest their funds into the renovation of their grandparent's property and, in exchange, Horrigan was to execute a will leaving the land to Christy and Ted, reserving a life estate in his wife Sue. In citing *Johnston v. Tomme*, 199 Miss.

337, 24 So.2d 730 (1946) the Court held that once the will was provided by Horrigan, the Statute of Frauds no longer applied and the contract to will became irrevocable, although the will could not be produced.

¶15. The Horrigans argue that the court was incorrect in holding that the decedent executed a holographic will which Christy and Ted relied on as there was never any evidence of such a writing. The Horrigans point out that the only witness who purportedly saw the will was Ted Bilbo, Sr. who could not recall at trial any words contained in the document. The Horrigans distinguish the *Johnston* case by pointing out that it did not involve an oral promise to convey land, but to execute a will and that in the case at hand there is no substantial proof of such a will.

¶16. The Horrigans further argue that the majority of cases in Mississippi hold a contract to devise or bequeath property by will to be enforceable but ordinarily, pursuant to the Statute of Frauds, must be in writing. *Estate of McKellar v. Brown*, 404 So.2d 550 (Miss. 1981). Even if proven, an oral agreement to convey land by will is within the Statute of Frauds, and specific performance of such an agreement cannot be enforced. *Estate of Collins v. Dunn*, 233 Miss. 636, 103 So.2d 425 (1958).

¶17. In *McKellar*, the defendant loaned the decedent $11,000 in exchange for the promise of decedent to devise property to the defendant. The decedent executed such a will but it was deemed insufficient. The court held that an action to enforce the oral agreement to make a will to devise property would be unenforceable. *McKellar,* 404 So.2d at 550.

¶18. Accordingly, the Horrigans believe that any oral agreement in this case is unenforceable and at best, Christy and Ted would be entitled to the return of any funds proven to be invested in the property.

¶19. Since Christy and Ted did rely upon the promise of the decedent to their detriment, equitable estoppel applies. There was complete performance of the agreement and investing in the renovation of the house takes the contract out of the scope of the Statute of Frauds. Mississippi law holds that agreements to exchange property for services, whereupon services are rendered but no will is executed, can only be enforced by quantum meruit. Mississippi law allows the enforcement of a contract to devise or bequeath property by will. *Alvarez v. Coleman*, 642 So.2d 361, 372 (Miss. 1994); *Williams v. Mason*, 556 So.2d 1045 (Miss. 1990); *Trotter v. Trotter*, 490 So.2d 827 (Miss. 1986). In most situations however, pursuant to the Statute of Frauds, Miss. Code Ann. § 15-3-1 (1995), the contract to will must be in writing to be enforceable. *Estate of McKellar,* 404 So.2d at 553. Even when the existence of an unwritten agreement to devise is proven, the statute precludes specific performance as a remedy. *Williams v. Mason,* 556 So.2d 1045 (Miss. 1990); *Liddell v. Jones*, 482 So.2d 1131, 1132 (Miss. 1986).

¶20. There is no substantial proof to show that an actual holographic will was executed. There is no testimony as to what exactly the will said, nor whether it was signed, dated or witnessed. However, it does appear that it was almost everyone's understanding that in exchange for investing their money in the renovation of the house, if Richard Horrigan was to predecease his wife, Sue, then she would have possession of the property until her death, upon which time it would go to Christy and Ted. Sue was one of only a small number of people who testified to the contrary. The determination of who to believe is that of the trier of fact, and cannot be overturned unless clearly erroneous.

¶21. While there is no substantial evidence that a holographic will existed, only that the promise to make a will was made, the conduct of Richard and Sue Horrigan did in fact induce Christy and Ted to invest

substantial funds into the renovation of the property. Therefore, the Horrigans are estopped from refusing Christy and Ted any benefits of the agreement as it would unjustly enrich Sue Horrigan.

### II. DID THE TRIAL COURT ERR IN FINDING THE EXISTENCE OF A CONSTRUCTIVE TRUST AND FURTHER FINDING THAT THE APPELLANTS WERE ESTOPPED FROM ASSERTING THE DEFENSE OF THE STATUTE OF FRAUDS WITH REGARD TO SAID TRUST?

¶22. The Court found that Mr. and Mrs. Horrigan owed a duty (as tutor and fiduciary and grandparent) to Christy and Ted who were minors at the time of the transaction and that a breach occurred when instead of placing the funds in a guardianship, the money was invested in an adult's property. As a result, the Court held that the decedent and his wife made a promise, accepted a monetary investment in their property induced by that promise, and by their subsequent actions breached that promise. The result was that Christy and Ted's investment was not secured by anything other than a promise. For these reasons, the court held that if the oral agreement to will is not effectuated then a constructive trust must be declared, and the Horrigans (and the Estate) were equitably estopped from asserting the defense of the Statute of Frauds.

¶23. In order to establish a constructive trust the burden is on the one asserting it "to establish by proof the facts and circumstances giving rise to a constructive trust with an extraordinary degree of certainty and clarity." *Summer v. Summer*, 224 Miss. 273, 276, 80 So.2d 35, 36 (1955)(citing *Stovall v. Stovall*, 218 Miss. 364, 67 So.2d 391, 395 (1953)). They contend that Christy and Ted have not met their burden of establishing the existence of such a trust as there was no proof of an abuse of power by the decedent.

¶24. While the decedent was the grandfather of Christy and Ted, that relationship alone does not give rise to the presumption of fraud. The decedent did serve as tutor for his grandchildren, and was responsible for the funds awarded them in connection with the death of their mother, however, the legal duties connected with that appointment ended when both of his grandchildren reached the age of majority in Louisiana. In addition, every check issued from the grandchildren's account was required to be co-signed by their father. There is no proof of abuse of a fiduciary or confidential relationship as all funds expended were approved by Christy and Ted's own natural guardian.

¶25. This Court has previously held that a constructive trust is a means recognized in our law where under one who unfairly holds a property interest may be compelled to convey that interest to another to whom it justly belongs. *Allgood v. Allgood,* 473 So.2d 416 (Miss. 1985); *Sojourner v. Sojourner*, 247 Miss. 342, 353, 153 So.2d 803, 807 (1963); *Russell v. Douglas*, 243 Miss. 497, 505-06, 138 So.2d 730, 734 (1962). Such a trust arises by implication from the relationship and conduct of the parties and may be established by parol testimony notwithstanding the statute of frauds. *Saulsberry v. Saulsberry*, 223 Miss. 684, 78 So.2d 758, 761 (1955). Substantial overreaching or fraud must be shown. *Pitchford v. Howard*, 208 Miss. 567, 583, 45 So.2d 142, 147 (1950). Proof of facts necessary to establish a trust by implication of law, i.e., a constructive or resulting trust, must be clear and convincing. *Shumpert v. Tanner*, 332 So.2d 411, 412 (Miss.1976); *Saulsberry v. Saulsberry*, 232 Miss. at 837, 100 So.2d at 600; see Bogert and Bogert, Trusts and Trustees § 472 (2d ed. 1978).

¶26. In *Lipe v. Souther*, 224 Miss. 473, 80 So.2d 471 (1955), this Court held that the mere existence of fiduciary or confidential relationships among the parties was insufficient to show fraud or overreaching warranting action by the court of equity:

It is the relationship plus the abuse of confidence imposed that authorizes a court of equity to construct a trust for the benefit of the party whose confidence has been abused.

*Lipe*, 224 Miss. at 484, 80 So.2d 471 (citing *Summer v. Summer*, 224 Miss. 273, 80 So.2d 35 (1955). Although not directly on point as the decedent was appointed tutor and not a guardian, Miss. Code Ann. § 91-7-253 (1994) allows us some insight into how our courts view financial deals between those in fiduciary relationships such as that between a guardian and a ward:

No . . .guardian, . . .or other fiduciary appointed by or acting pursuant to the authority of any chancery court may borrow or use for his own benefit, directly or indirectly, any of the funds or property of the estate committed or entrusted to him **. . .**

¶27. In the case at hand, the decedent was in fact both a tutor[2] to Christy and Ted and their grandfather. We have previously held that the relationship between a guardian and ward is a fiduciary relationship as a matter of law. *Merchants & Planters Bank v. Williamson*, 691 So.2d 398, 404 (Miss. 1997). Christy and Ted were approached by their grandparents and urged to invest money, which they had previously been unaware they possessed, into the construction and renovation of their grandparent's house. It is clear that Christy and Ted trusted and relied on the Horrigan's promise that the property would be willed to them per the agreement. Relying upon this agreement, Christy and Ted invested a majority of their savings into the renovation.

¶28. If the Horrigans refuse to effectuate the oral agreement to will then a breach of the fiduciary duty has occurred and a constructive trust should be declared. To refuse Christy and Ted the benefits of the agreement would unjustly enrich Sue Horrigan. While this Court is unable to grant specific performance in these circumstances, we do hold that as a result of the Horrigan's conduct, a constructive trust has been created in favor of Christy and Ted which will continue to exist until such time as they are repaid the $22, 178 plus interest from the date of last payment.

### III. DID THE TRIAL COURT ERR IN AWARDING RENT ON THE HOUSE ONLY BEGINNING FROM THE DATE OF JUDGMENT AND NOT FROM THE DATE OF THE DEATH OF RICHARD HORRIGAN?

¶29. The issue of rent was not mentioned by either side until litigation began. The Court determined that the parties relationship should be treated as one of life tenant and remainderman. Under that analysis, the Court found that Sue Horrigan was welcome to move back into the house (not the apartment) and Christy and Ted must leave the house. If Sue decides not to move back she may rent that house at a reasonable rate of $600 a month to whomever she chooses, beginning November 1998 and continuing each month thereafter. However, no past due rents would be collected on the house or apartment.

¶30. The Horrigans argue that if Sue is to be awarded a life tenancy, then she should be able to collect rent on both the house and apartment. They also argue that she should be entitled to past rents on both the apartment and the house as any rights Sue Horrigan is entitled to were created upon decedent's death. The Horrigans cite 51 Am. Jur. 2d *Life Tenants and Remaindermen* §130, at 388-89 (1970), for support of the holder of a life estate's rights to rent:

The rule is well settled that rents from real estate during the existence of a life estate belong to a legal life tenant or constitute income to which an equitable life beneficiary of a trust is entitled. Such rents

from the real property are the very interest which a life tenant acquires in the property, and in them a remainder man has no interest during the existence or duration of the life tenancy.

(footnotes omitted).

¶31. Christy and Ted agree with the court's determination that a life tenant is entitled to rent payments and that remainderman have no interest in such proceeds. However, they disagree with the court's holding that Sue Horrigan may charge them rent for the house, as none had ever been requested in the past. The argument follows that since the Horrigans allegedly induced, invited and allowed Christy and Ted to reside on the property, Sue is now estopped from demanding that they either pay rent or vacate the property. Christy and Ted claim that even Sue's testimony at trial confirmed that she never intended to charge rent:

Q: And did you charge them rent when they lived there?

A: No indeed. I charged them-they was supposed to pay some rent, but like Teddy said yesterday, when they could pay, they'd pay. When they couldn't pay, they wouldn't.

Q: And from what I understand your testimony, you've never asked Ted and Christy for rent?

A: Unh-unh.

¶32. After a considerable review of the record and testimony, it appears that Sue Horrigan and the decedent never actually required Christy or Ted pay rent. The testimony of Eunice LeBlanc hints that it was not until the litigation began that the idea of charging rent arose.

Q: All right. Tell the Court why you did not attempt to collect any rent as executor on the property on 603.

A: We really didn't want to collect rent from Ted and Christy. There was no- -we didn't mind that they lived there. My mother didn't mind, but we went to probate the will, and they contested the will. So then we were going to have expenses and lawyers' fees and all that kind of stuff.

¶33. Looking to the facts and circumstances surrounding this case, the chancery court was correct in finding that Christy and Ted were to have the apartment at all times, and for that reason, there would be no rent charged as to that portion of the real property. However, Christy and Ted's argument that they are entitled to remain in the house rent-free is without merit and in accordance with the chancellor's decision they must either vacate the house or pay Sue Horrigan, as holder of a life estate, rent for the use of the house. The amount of rent as set by the Court was $600 per month, and with no proof presented that this amount is unfair to either party the amount is upheld.

### III.

¶34. Although there is no substantial evidence of a holographic will, there was an oral agreement between Horrigan and his grandchildren, Christy and Ted. The agreement provided that if Christy and Ted would use their trust fund to renovate the Horrigans' home and apartment, a will would be drafted conveying them the property upon the Horrigans' death. This property was to include Parcels A and B located at 9125 Highway 603 in Bay St. Louis, Mississippi. Since specific performance is not an available remedy, we find that a constructive trust was created, with Sue Horrigan owing Christy and Ted the sum of $22,178, plus

interest from the date of the last payment, for their investment into her house. As to the issue of rent, as life tenant to the property, Sue Horrigan may realize the rents of the house if she so chooses up to the amount of $600 per month retroactive November to 1998.

¶35. We affirm in part and reverse in part the judgment of the Hancock County Chancery Court and remand this case for further proceedings consistent with this opinion.

¶36. **AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

**PRATHER, C.J., SULLIVAN, P.J., BANKS, SMITH AND MILLS, JJ., CONCUR. PITTMAN, P.J., AND WALLER, J., CONCUR IN RESULT ONLY. COBB, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION.**

1. The Horrigans' attorney admitted at oral argument that the sum contributed by Christy and Ted amounted to $22,178.

2. A tutor in Louisiana is the equivalent of a guardian in Mississippi.