# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-CA-00544-COA

PATSY B. WHITE                                                       APPELLANT

v.

WILLIAM T. WHITE D/B/A ROYERS ESTATES                         APPELLEE
INC.

DATE OF JUDGMENT:              03/23/2018
TRIAL JUDGE:                   HON. SUSAN RHEA SHELDON
COURT FROM WHICH APPEALED:     PIKE COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:        PAUL E. ROGERS
ATTORNEY FOR APPELLEE:         WILLIAM T. WHITE (PRO SE)
NATURE OF THE CASE:            CIVIL - REAL PROPERTY
DISPOSITION:                   AFFIRMED - 05/21/2019
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### EN BANC.

### GREENLEE, J., FOR THE COURT:

¶1.     This appeal arises from William T. White's failure to transfer title to real property to his mother, Patsy B. White, after she completed payments on the deed of trust. The Pike County Chancery Court dismissed Patsy's second amended complaint and found that her breach-of-contract claim was barred by the statute of frauds and the statute of limitations. She appeals from that order. We find no error and affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     In November 2007, Royers Estates Inc. received approximately 22.5 acres of property in Pike County (the "subject property") in exchange for a deed of trust valued at $56,375. The deed of trust was between William, the owner of Royers Estates, and Pauline Edwards,

the previous owner of the property. The deed of trust indicated that it was a security for a promissory note where William was to pay Pauline the sum of $882 per month until it was paid in full.

¶3. William became unable to make the monthly payments. Patsy, William's mother, agreed to take over the payments on the subject property in order to avoid foreclosure. Patsy claimed that in exchange for making the payments, William verbally agreed to transfer his interest in the subject property to her.

¶4. Along with the deed of trust on the subject property, Patsy also took over payments for other properties under the same condition: that William transfer title to Patsy in return for payment. According to Patsy, "[t]itle to the subject property was supposed to have been transferred at the same time as the other titles to the other properties were transferred . . . ." The deeds evidencing the conveyance of the other properties were attached to the first amended complaint and dated December 16, 2008 and June 16 and 17, 2009.

¶5. In November 2013, Patsy completed payments on the subject property. When Patsy attempted to sell the subject property in March 2014, she discovered that title to the subject property had never been transferred to her but instead remained in William's name.

¶6. In July 2014, Patsy filed a complaint for quiet title, injunction, and damages. In essence, Patsy sought specific performance of the verbal agreement. Additionally, Patsy asked for damages if the title defect could not be cured and that William be prevented from transferring his interests in the property to any other party.

¶7. Patsy amended her complaint one month later to include the other properties she

agreed to pay for in return for title. William, acting pro se, filed an answer along with a motion to dismiss. Following a hearing in April 2016, the chancery court allowed Patsy to amend her complaint. On April 22, 2016, Patsy filed a second amended complaint and asserted a claim for breach of contract. Patsy further sought mandatory injunctive relief and requested the imposition of a constructive trust and damages. Patsy also requested "that she be granted a lien against the subject property to secure said lien."

¶8.     William moved to dismiss the second amended complaint. He asserted that the statute of frauds and the statute of limitations barred Patsy's breach-of-contract claim. The chancery court granted William's motion to dismiss on July 7, 2017. The next day, Patsy moved for reconsideration seeking clarification because the order gave no reason for the dismissal.

¶9.     On March 23, 2018, the chancery court issued an order with findings of fact and conclusions of law denying Patsy's motion for reconsideration. In that order, the court found that Patsy's breach-of-contract claim was barred by the statute of frauds and the statute of limitations. Additionally, the court determined that Patsy failed to meet the requirements for injunctive relief and "fail[ed] to plead any of the requisite elements for the imposition of a constructive trust." The chancery court concluded that the second amended complaint was properly dismissed for failure to state a claim under Rule 12(b)(6) of the Mississippi Rules of Civil Procedure.

¶10.    It is from this order that Patsy now appeals. She alleges that (1) her claim does not violate the statute of frauds; (2) her claim does not violate the statute of limitations; (3) the chancery court wrongly dismissed her request for mandatory injunctive relief; (4) the

3

chancery court wrongly denied the imposition of a constructive trust; and (5) the chancery court wrongly denied her the granting of a lien against the subject property. Finding no error, we affirm.

## STANDARD OF REVIEW

¶11.   "Chancellors are vested with broad discretion, and this Court will not disturb the chancellor's findings unless the court's actions were manifestly wrong, the court abused its discretion, or the court applied an erroneous legal standard." *Johnston v. Parham*, 758 So. 2d 443, 445 (¶4) (Miss. Ct. App. 2000).

¶12.   "When considering a motion to dismiss, this Court's standard of review is de novo." *Scaggs v. GPCH-GP Inc.*, 931 So. 2d 1274, 1275 (¶6) (Miss. 2006). "[T]he allegations in the complaint must be taken as true and the motion should not be granted unless it appears beyond doubt that the plaintiff will be unable to prove any set of facts in support of his claim." *Id.*

## DISCUSSION

### I.   Does Patsy's claim violate the statute of frauds?

¶13.   Patsy first argues that her complaint was wrongfully dismissed for violation of the statute of frauds under Mississippi Code Annotated section 15-3-1(c) (Rev. 2012). Under the statute of frauds, "[a]n action shall not be brought whereby to charge a defendant or other party . . . upon any contract for the sale of lands . . . unless . . . the promise or agreement upon which such action may be brought . . . shall be in writing, and signed by the party to be charged therewith . . . ." Miss. Code Ann. § 15-3-1(c). In short, certain types of contracts

4

must be in writing to be enforceable. *Williams v. Evans*, 547 So. 2d 54, 56 (Miss. 1989).

¶14.    As the chancery court properly noted, "[t]he obligation [Patsy] seeks to impose upon [William] is the conveyance of an interest in real property based on an alleged oral agreement." Under section 15-3-1(c), such an obligation must be in writing. It is undisputed that there was no written agreement regarding William's promise to transfer title to Patsy upon full payment of the note and deed of trust. Accordingly, Patsy's breach-of-contract claim is barred by the statute of frauds.

¶15.    Patsy asserts that even if the agreement is barred by the statute of frauds, the exception of equitable estoppel applies. But as the chancery court noted, Patsy failed to allege the exception in the second amended complaint. Indeed, Patsy never pled a viable defense to the statute of frauds. "[I]ssues presented for the first time on appeal are procedurally barred from consideration." *McKenzie v. Miss. Mun. Serv. Co.*, 193 So. 3d 676, 680 (¶15) (Miss. Ct. App. 2016).

## II.    Does Patsy's claim violate the statute of limitations?

¶16.    Patsy claims that William breached their verbal contract when he failed to transfer title to the subject property to her in exchange for her monthly payments under the deed of trust. According to Patsy, William breached the contract by failing to transfer title to the subject property at or around the same time he transferred title to the other properties. The record shows that title to the other properties was transferred on December 16, 2008, and June 16 and 17, 2009.

¶17.    Mississippi Code Annotated section 15-1-49 (Rev. 2012) provides a three-year statute

of limitations for a breach-of-contract claim. Subsection two of section 15-1-49 states: "In actions for which no other period of limitation is prescribed and which involve latent injury or disease, the cause of action does not accrue until the plaintiff has discovered, or by reasonable diligence should have discovered, the injury." Miss. Code Ann. § 15-1-49(2). Patsy asserts that she first learned of William's failure to transfer title to the subject property in March 2014. Thus, Patsy claims that the three-year statute of limitations should not begin until March 2014. But in her second amended complaint, Patsy acknowledged that title to the subject property was "supposed to have been transferred" at the same time as the other properties. As noted by the chancery court, "[t]he original complaint in this action was filed on July 21, 2014, more than three years after the latest of the transfer dates above (June 17, 2009)."

¶18. Patsy should have discovered the failure to transfer title long before the three-year statute of limitations expired. Reasonable diligence would have revealed the title defect before her breach-of-contract claim became barred. Because Patsy failed to timely pursue her breach-of-contract claim, it is barred under section 15-1-49 of our code.

### III. Did the chancery court wrongly dismiss Patsy's request for mandatory injunctive relief?

¶19. In her second amended complaint, Patsy sought mandatory injunctive relief, specifically, an order compelling William to deed the subject property to her. But as the chancery court noted, the second amended complaint "do[es] not meet the requirements for obtaining injunctive relief under [Mississippi Rule of Civil Procedure] 65" and "fails to allege any facts that would support a request for mandatory injunctive relief." Instead, Patsy

6

simply requested that the chancery court "order [William] to specifically perform [his] obligation under the parties' agreement by transferring title to [Patsy] . . . ." But as the chancery court properly determined, there was no enforceable agreement between the parties. Thus, the chancery court properly dismissed the request for mandatory injunctive relief.

### IV. Did the chancery court wrongly deny the imposition of a constructive trust?

¶20. Patsy further sought the imposition of a constructive trust. "Constructive trusts are created for the purpose of preventing unjust enrichment, whereby one unfairly holding a property interest may be compelled to convey that interest to whom it justly belongs." *Griffin v. Armana*, 687 So. 2d 1188, 1195 (Miss. 1996). The supreme court has defined a constructive trusts as follows:

> A constructive trust is one that arises by operation of law against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy.

*In re Estate of Parker*, 13 So. 3d 877, 879-80 (¶7) (Miss. Ct. App. 2009) (quoting *Planters Bank & Trust Co. v. Sklar*, 555 So. 2d 1024, 1034 (Miss. 1990)). While we review the existence of a constructive trust de novo, "[t]he party advocating a constructive trust must show by clear and convincing proof that a constructive trust is necessary as a matter of law." *Manning v. Perry*, 242 So. 3d 972, 976 (¶18) (Miss. Ct. App. 2017).

¶21. The chancery court addressed Patsy's constructive-trust argument in its findings:

> In this case, the Second Amended Complaint fails to plead any of the requisite elements for the imposition of a constructive trust.

a. First, the Court finds that Defendant cannot have been "unjustly enriched" as a matter of law. The allegations in the Complaint establish that Plaintiff's alleged payments were voluntarily made. Under Mississippi law, voluntary payments cannot be recovered back, and "if payment is made, even by mistake, to a creditor of a third person to satisfy a just debt of that third person, the payor has no right of restitution of or from the third party." *Omnibank of Mantee v. United Southern Bank*, 607 So. 2d 76, 92 (Miss. 1992) (citations omitted).

b. Second, there was consideration for Plaintiff's payments of the indebtedness on the subject property. The Court takes judicial notice of a previous case involving the parties in which the Chancery Court of Pike County considered the issue and expressly found that Plaintiff's payments to the secured creditors on Defendant's properties constituted "compelling proof of the love and concern" she had for Defendant (her son). *See* Judgment, para. 5, 7, *Edwin L. Bean v. William Timothy White, et al.*, In the Chancery Court of Pike County, Mississippi, Cause No. 2009-664. It is well-established in Mississippi that "love and affection" may, in the circumstances present[ed] here, constitute adequate consideration. *Estate of Fallon v. Fallon*, 30 So. 3d 1281, 1283 (Miss. App. 2010).

c. Further, based upon the allegations in the Complaint, the Court finds that Defendant was clearly not in a position to exercise a dominant influence over Plaintiff. In fact, the Second Amended Complaint alleges just the opposite.

d. Finally, the Second Amended Complaint wholly fails to allege that Defendant engage in any type of fraud or overreaching.

¶22. The chancery court's finding was proper. "[I]t is well-settled that a constructive trust does not arise simply because a party fails to perform under a contract." *Barriffe v. Estate of Nelson*, 153 So. 3d 613, 618 (¶27) (Miss. 2014). And "[a] familial relationship is not intrinsically one of confidence." *McNeil v. Hester*, 753 So. 2d 1057, 1065 (¶28) (Miss. 2000). Patsy failed to show wrongful conduct that could justify the imposition of a constructive trust. *E.g.*, *Joel v. Joel*, 43 So. 3d 424, 431 (¶24) (Miss. 2010) (listing examples of such

conduct). We affirm the chancery court's findings.

**V.      Did the chancery court wrongly deny Patsy the granting of a lien against the subject property?**

¶23.   Patsy requested "that she be granted a lien against the subject property to secure said lien." As the chancery court noted, "the law does not recognize a 'lien to secure a lien.'" Moreover, "there simply was no debt to form the requisite basis for a lien" because Patsy's claim is barred by the statue of frauds and the statute of limitations.

**CONCLUSION**

¶24.   In light of our standard of review, we find Patsy's second amended complaint was properly dismissed. Therefore, we affirm the chancery court's judgment.

¶25.   **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., AND LAWRENCE, J., CONCUR. WESTBROOKS, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. J. WILSON, P.J., TINDELL, McDONALD AND C. WILSON, JJ., CONCUR IN PART AND DISSENT IN PART WITHOUT SEPARATE WRITTEN OPINION. McCARTY, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED IN PART BY J. WILSON, P.J., WESTBROOKS, TINDELL, McDONALD AND C. WILSON, JJ.**

**McCARTY, J., CONCURRING IN PART AND DISSENTING IN PART:**

¶26.   I agree with the lead opinion that the statute of frauds bars this action. Yet the result leaves the son to reap a windfall at the expense of his mother and strands the mother without a remedy. The solution to this problem is either the creation of a constructive trust or equitable estoppel (if they are warranted by the proof). As a result, I must respectfully dissent in part.

9

¶27. "A constructive trust is a judicially imposed remedy used to prevent unjust enrichment when one party wrongfully retains title to property." *Presbytery of St. Andrew v. First Presbyterian Church PCUSA of Starkville*, 240 So. 3d 399, 405 (¶27) (Miss. 2018). As the Supreme Court has held, this "is a fiction of equity created for the purpose of preventing unjust enrichment by one who holds legal title to property which, under principles of justice and fairness, rightfully belongs to another." *McNeil v. Hester*, 753 So. 2d 1057, 1064 (¶23) (Miss. 2000).

¶28. The remedy is broad:

> A constructive trust is one that arises by operation of law against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy.

*Id*. at (¶24).

¶29. In modern times, four elements must be met before a constructive trust will be imposed: "(1) a confidential or fiduciary relationship which must normally be shown; (2) a promise by defendant; and (3) transfer by plaintiff to defendant in reliance on defendant's promise (4) under circumstances that constitute unjust enrichment." James W. Shelson, *Mississippi Chancery Practice*, § 41:11 (2018). Without a confidential relationship, there can be no constructive trust. *See Bond v. Bond*, No. 2017-CA-00599-COA, 2018 WL 5603679, at *1 (¶5) (Miss. Ct. App. Oct. 30, 2018) (A claim "to a constructive trust" will be "foreclosed upon by [the] failure to show that a confidential relationship existed."). Likewise, if there is a confidential relationship but "no abuse of confidence," the court

cannot create a trust. *In re Estate of Hood*, 955 So. 2d 943, 949 (¶22) (Miss. Ct. App. 2007).

¶30.    "Clear and convincing proof is necessary to establish a constructive trust." *McNeil*, 753 So. 2d at 1064 (¶25). It "is a question of law" whether this legal remedy should be applied "to the set of facts at hand." *Id*. at (¶26). As with any case involving an allegation of a confidential relationship, this remains a fact-intensive inquiry, and can only be reached once a chancellor has taken proof on the existence of a confidential relationship. *Id*. at (¶27).

¶31.    Many years ago the burden to create a constructive trust was stated plainly: "There must be conduct influential in producing the result, and but for which such result would not have occurred amounting, in the view of a court of equity, to fraud in order to save the case from the Statute of Frauds." *Lipe v. Souther*, 224 Miss. 473, 483, 80 So. 2d 471, 475 (1955).

¶32.    In her second amended complaint, Patsy specifically asked for a constructive trust if the chancery court refused to honor the agreement for the transfer of land: "Should the Court find that the parties did not have an enforceable agreement for the transfer of title to the subject property, Plaintiff prays that the Court will impose a constructive trust and compel transfer of title to the subject property to Plaintiff." Patsy further alleged that she "paid the note owed [] and but for Plaintiff doing so, the property would have been foreclosed and Defendants would have lost their title to the property." As a result, she alleged that "[a] constructive trust is necessary in this matter to prevent unjust enrichment of Defendants who unfairly hold title to the subject property as a result of their wrongful refusal to convey title to Plaintiff."

¶33.    In his motion to dismiss, William argued that "[t]he request for the imposition of a

11

Constructive Trust fails to set forth factual allegations respecting any, much less each, of the material elements necessary to sustain recovery."

¶34.     In setting out its findings of fact and conclusions of law supporting the dismissal, the chancery court actually agreed that Patsy had "paid the remaining balance due on the subject property in full" and that William "subsequently refused Plaintiff's requests to transfer title to the subject property to her." Yet the chancery court claimed that "[i]n this case, the Second Amended Complaint fails to plead any of the requisite elements for the imposition of a constructive trust."

¶35.     However, based on our rules in Mississippi, complaints are only to be "short and plain." M.R.C.P. 8(a)(1). There is no specific requirement that each and every element be pled – indeed, the only requirement is that a defendant be put on notice. The invocation of the language regarding a constructive trust was sufficient to put William on notice and to move the action beyond the motion to dismiss stage. To dismiss this case for a failure of technical pleading ignores the plain language of Rule 8 and our precedent applying it.[1] Furthermore, it is too harsh of a conclusion given the chancery court's findings that Patsy did

---

[1]     For a related reason I disagree with the lead opinion's conclusion regarding equitable estoppel. The lead opinion holds that Patsy "failed to allege the exception in the second amended complaint," and that she "never pled a viable defense to the statute of frauds." *Ante* at ¶15. Yet by our rules in Mississippi, complaints are only to be "short and plain." M.R.C.P. 8(a)(1). For the most part the Statute of Frauds is not something one would include in a complaint, but is instead an affirmative *defense* to a claim of contract breach. Indeed, it is specifically listed as an affirmative defense in Rule 8(c); *see also Hertz Commercial Leasing Div. v. Morrison*, 567 So. 2d 832, 835 (Miss. 1990) ("If he wishes to charge that the statute of frauds renders the contract unenforceable in law, he must so plead affirmatively."). There is nothing in Rule 8 which requires a plaintiff to anticipate and then combat a possible defense in a complaint.

indeed pay off William's indebtedness.[2]

¶36.    I believe this case echoes one where two grandchildren "were approached by their grandparents and urged to invest money, which they had previously been unaware they possessed, into the construction and renovation of their grandparent's house." *In re Estate of Horrigan*, 757 So. 2d 165, 171 (¶27) (Miss. 1999).  In return, the two grandchildren were promised "they would be willed the entire property after both [their grandfather] and his wife died." *Id*. at 167 (¶2).  Of course, the grandchildren were not given the property upon his passing. *Id*.

¶37.    But the grandchildren were not stranded without a remedy.  In addition to applying equitable estoppel, the Court held that a constructive trust should be imposed. *Id*. at 171 (¶28). Since the grandchildren relied on the agreement from their grandfather, they "invested a majority of their savings into the renovation." *Id*. at (¶27).  "To refuse [the grandchildren] the benefits of the agreement would unjustly enrich" the remaining landowner. *Id.* at (¶28). "While this Court is unable to grant specific performance in these circumstances," since the Statute of Frauds barred recovery, "we do hold that as a result of the [grandfather's] conduct, a constructive trust has been created in favor of [the grandchildren] which will continue to exist until such time as they are repaid the [cost of the renovation] plus interest from the date of last payment." *Id*.

¶38.    In *Horrigan*, equity was done.  Additionally, that case had ample proof at trial and for

---

[2] The chancery court found that these payments were voluntary.  This matter is clearly in hot dispute between the parties, and given Patsy's institution of a lawsuit against her son for the property or some form of equitable relief, the issue should have not been dealt with at the motion-to-dismiss level.

appellate review. Critically, the conclusion that the mother failed to prove her claims is self-defeating since her claims were dismissed at the motion-to-dismiss stage. She was never allowed to develop proof in discovery that might have supported her claims. Here, I believe we simply do not have enough information in the record to determine if the high burden of a constructive trust was met. We cannot assume simply because the relationship is between a mother and a son that it was confidential in nature; indeed, in the *Bond* case, the case involved property and a father and a son, but there was no confidential relationship. *Bond*, 2018 WL 5603679, at *1 (¶5). By the same token, we cannot assume that even if a confidential relationship existed that there was necessarily an abuse of the confidence. For this reason it was premature for the chancery court to dismiss the case in its entirety before taking proof on these fact-intensive issues. A constructive trust is a remedy for loss when a claim fails due to the Statute of Frauds, and it should have been allowed to proceed.

¶39. It appears from the arguments of the parties that Patsy paid over fifty thousand dollars to a third party to keep William out of foreclosure. In exchange, William was to convey his interest in property to her. She is out the money, and he retains the property now free and clear, in a classic windfall. Patsy has clearly suffered a harm, and has turned to the court system for help. As the Supreme Court glumly declared in *Horrigan*, "at times, blood is not thicker than water." *Horrigan*, 757 So. 2d at 166 (¶2). Instead of depriving her of a remedy, I would apply the longstanding principle that "if there is no adequate remedy at law, equity will step in." *Tolbert v. Southgate Timber Co.*, 943 So. 2d 90, 99 (¶31) (Miss. Ct. App. 2006). For equity will not suffer a wrong without a remedy. *Emmons v. Emmons*, 217 Miss.

14

594, 600, 64 So. 2d 753, 755 (1953). The better solution is to allow the imposition of a constructive trust or the application of equitable estoppel.

¶40. I would also not find the suit time barred for Patsy to seek recovery of some sort because she claimed that she did not discover that her son breached the agreement for the transfer of property until a later date. This case was decided at the motion to dismiss level under Rule 12; the matter is simply not developed enough on the plain face of the complaint to determine if it is time barred.

¶41. I agree that the statute of frauds is applicable. But because we allow a wrong without a remedy in this case, I must respectfully dissent in part.

**J. WILSON, P.J., WESTBROOKS, TINDELL, McDONALD AND C. WILSON, JJ., JOIN THIS OPINION IN PART.**