# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2011-CA-01664-SCT

*EUGENE BARRIFFE AND ERNIE BARRIFFE*

*v.*

*ESTATE OF LAWSON V. NELSON, JAMES DWIGHT NELSON AND DAVID R. NELSON*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/12/2011 |
| TRIAL JUDGE: | HON. D. NEIL HARRIS, SR. |
| TRIAL COURT ATTORNEYS: | JASON B. PURVIS |
| | MATTHEW QUINLIVAN |
| | DOUGLAS L. TYNES, JR. |
| | DOUGLAS L. TYNES, SR. |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | JASON B. PURVIS |
| | MATTHEW QUINLIVAN |
| ATTORNEYS FOR APPELLEES: | DOUGLAS L. TYNES, SR. |
| | DOUGLAS L. TYNES, JR. |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | ON DIRECT APPEAL:  AFFIRMED IN PART, REVERSED IN PART AND RENDERED. ON CROSS-APPEAL: REVERSED AND RENDERED - 10/02/2014 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**DICKINSON, PRESIDING JUSTICE, FOR THE COURT:**

¶1.    Ernie and Eugene Barriffe seek compensation for money they gave to Lawson Nelson

to start a landfill business, and for improvements they made to an apartment on his land.  The

chancellor found that Nelson held the money and improvements in a constructive trust.  But

because the Barriffes failed to establish the existence of a constructive trust, we reverse in part and render.

## FACTS AND PROCEDURAL HISTORY

¶2. This family stew began from a familiar recipe: Trusting family members enter financial transactions with each other and later discover that their recollections and expectations do not match. And because the family members failed to put anything in writing, the courts are left to sort it out.

### *The landfill business*

¶3. The story began when a New Orleans lawyer, Eugene Barriffe, and his wife, Ernie, gave money to Ernie's brother, Lawson Nelson, to start a landfill business in Jackson County, Mississippi. The Barriffes testified that Lawson approached them for an initial "investment" of $100,000—and later, a second "investment" of $65,000—into his idea to start a landfill business. In return, the Barriffes understood they were to receive two-thirds of the profits from the landfill business, with payments to begin when Eugene retired. Nelson denied the conversation and denied receiving the "investments" from the Barriffes.

¶4. During the trial, the chancellor challenged Eugene's description of the transaction as an investment, noting "[y]ou said it was an investment. It sounds like a loan to me." The chancellor emphasized that "[i]t looks like a loan. It smells like a loan. It walks like a loan. It talks like a loan . . . ." Eugene flatly rejected this characterization and said he "made absolutely sure that everybody understood it was not a loan."

2

¶5.     Lawson used part of the money to purchase 240 acres. Approximately one year later, Lawson put eighty of the 240 acres in Ernie's name. He later claimed the transfer was for $60,000. In this strange twist to the story, the Barriffes claim they did not give Nelson the $60,000, and that they were unaware of the land transfer. Ernie claims that in March 2002, Nelson told her about the land transfer and asked her to return the land to his name so he could sell all the landfill property. She agreed.

¶6.     When Lawson sold the landfill business nine months later, Ernie said she "assumed" Lawson would put her and her husband's interest "in an escrow account so that [they] would have it when [they] asked him for it." Eugene admitted that he knew Lawson sold the landfill in December 2002, but that he never asked for their two-thirds share of the landfill "[b]ecause the way it had been agreed on was our money was going to come after I retired." The chancellor then asked Eugene when he retired, and Eugene said he retired when he "hit 65 in 2005[,] which was the year of the hurricane. And we . . . didn't make our demand, Judge."

¶7.     When the Barriffes later asked Nelson about their share of the proceeds of the sale of the landfill, Nelson denied they were entitled to anything.

### *The apartment*

¶8.     After Hurricane Katrina destroyed their home in New Orleans, Ernie and Eugene moved into an apartment on Lawson's property. The Barriffes testified that they made substantial improvements to the apartment and that Lawson had agreed to convey the property to them in the future. Lawson admitted that he told Ernie that she could live in the

3

apartment for the rest of her life, but that, after he died, he planned to leave the building to his son Dwight.

¶9. In 2009, the Barriffes asked Lawson to deed the property with the apartment to them. According to Ernie, Lawson became furious and refused to deed the property to them, deeding it instead to his sons. Lawson's refusal sparked this litigation filed by the Barriffes on June 10, 2009, against Nelson and the sons.

¶10. During the course of the litigation, Lawson died, and his estate was substituted as the real party in interest. Throughout the trial the chancellor sporadically enforced time limits on the parties' ability to examine witnesses. In one important exchange between the Nelsons' attorney and Eugene, the chancellor admonished the attorney to "[a]sk your next question . . . You're beyond your 30 by about eight minutes."

¶11. After the trial, the chancellor entered an order finding that "the $165,000 given to Lawson by the Barriffes was a loan and not an investment." And "[a]s to the apartment the Barriffes built inside the metal building on the Wildwood property, the Court finds that Lawson intended to convey this property to the Barriffes." The Court then imposed two constructive trusts for the Barriffes—one for the $165,000 when the Barriffes transferred their eighty acres to Lawson to sell, and the second, which was in the nature of an equitable lien on the apartment and property, for $72,645.18.

¶12. Displeased with the chancellor's judgment, the Nelsons moved for reconsideration or a new trial. The chancellor ordered a new trial and re-opened discovery, stating in his order that he granted the new trial to correct "an error in limiting the Plaintiffs' and the

4

Defendants' examination and cross examination of the witnesses and for reasons stated in the transcript, record[,] and judgments of the Court."

¶13. After the testimony and other proof in the second trial—which was largely consistent with that of the first trial—the chancellor found that there were actually four constructive trusts, because "the Nelsons[,] through their position of trust and confidence as [a] family[,] received substantial sums of money from the Barriffes without making compensation for the same."

¶14. The chancellor said the first constructive trust began in August 1986 when Lawson bought the landfill with the Barriffes' $100,000 check. While the Barriffes never produced this check, the chancellor "weighed the testimony and evidence around this transaction and finds it credible since it was uncontroverted that Ernie was at the bank when the transaction took place." The chancellor found that the Barriffes' action on this trust was barred by the statute of limitations.

¶15. Next, the chancellor found that the second constructive trust began when the Barriffes built the first floor of the apartment in the metal building in the mid 1990s. The chancellor likewise found that the Barriffes' action was barred by the statute of limitations.

¶16. The chancellor found that the third constructive trust began in March 2002 when the Barriffes transferred eighty acres to Lawson. The chancellor said Lawson admitted the Barriffes gave him at least $60,000 but there was no proof the Barriffes received any money when Lawson sold the landfill. The chancellor found that the Barriffes' action on this constructive trust was timely and not time-barred.

5

¶17. And finally, the chancellor found that the fourth constructive trust began in December 2005 when the Barriffes spent $36,221.09 on a second-floor addition to the apartment. The chancellor found that "[a] constructive trust is appropriate in this instance due to the fact the statute of frauds prevents an actual award of the Wildwood property to the Barriffes." The chancellor found that the Barriffes' action on this constructive trust was also timely.

¶18. Ultimately, the chancellor awarded the Barriffes a "joint and several judgment" for $96,221.09 ($60,000 from the third constructive trust plus $36,221.09 from the fourth constructive trust) against the Estate of Lawson Nelson and Nelson's two sons (Nelsons).

¶19. Following the chancellor's second judgment, both parties appealed to this Court. The Barriffes raise four issues in their appeal: First, they argue that the chancellor erred in granting a new trial; second, that he should have awarded attorneys' fees; third, that he erred in his application of the statute of limitations; and finally, that the statute of frauds does not apply to constructive trusts.

¶20. The Nelsons raise three issues in their cross-appeal: First, that the trial court erred in finding that a third constructive trust was created in March 2002; second, the trial court erred in giving the Barriffes' $96,221; and third, that the chancellor erred in imposing an equitable lien on the apartment.

**ANALYSIS**

¶21. First, we will review the chancellor's decision to grant a new trial. Second, we will review the chancellor's analysis of the agreements between the Barriffes and Lawson with respect to constructive trusts. And, finally, we will review the chancellor's decision to

6

impose an equitable lien against the property for the improvements made by the Barriffes. Because issues two and three are dispositive, we will not address the chancellor's decision on attorneys' fees.

## I.     The chancellor did not abuse his discretion in granting the Nelsons' motion for a new trial.

¶22.    Mississippi Rule of Civil Procedure Rule 59 provides that "[a] new trial may be granted . . . in an action tried without a jury, for any of the reasons for which rehearings have heretofore been granted in suits in equity in the Courts of Mississippi."  Trial courts are "given great deference in deciding whether to grant a new trial."[1]  And "[g]iven the important corrective role of new-trial motions, the discretion granted to the court is exceedingly broad."[2]  We review a trial court's decision to grant a new trial under an abuse-of-discretion standard.[3]

¶23.    In this case, the chancellor believed that a new trial was needed because he had sporadically enforced arbitrary time limitations throughout the trial. The chancellor believed a new trial and "a new day" would help him reach the correct result in this case.

---

[1] ***Odom v. Roberts***, 606 So. 2d 114, 118 (Miss. 1992) (citing ***Motorola Commc'ns & Elecs., Inc. v. Wilkerson***, 555 So. 2d 713, 723 (Miss. 1989)), *overruled by* ***Dedeaux v. Pellerin Laundry, Inc.***, 947 So. 2d 900 (Miss. 2007).

[2] Jack H. Friedenthal, et al., *Civil Procedure* 592 (4th ed. 2005).

[3] ***Rogers v. Morin***, 791 So. 2d 815, 821 (Miss. 2001) (citing ***Muhammad v. Muhammad***, 622 So. 2d 1239, 1250 (Miss. 1993)).

¶24. This is a close call. We see little evidence in the record that the chancellor was unfair to either side with respect to time limitations, and we note that his threats were mostly unenforced. But we cannot say that the chancellor exceeded his broad authority by granting a new trial in this case. Therefore, we will review the chancellor's second judgment and findings of fact. We note that, even if we found the chancellor had erred in granting the second trial, our decision and disposition of this case would be no different.

## II. The Barriffes are not entitled to a constructive trust related to the landfill contract.

¶25. The Barriffes argue that they are entitled to a constructive trust for money they invested in Lawson's landfill business. The Barriffes' testimony throughout the trial about their dealings with Lawson was often uncertain and unclear. But the Nelsons consistently have disputed the very existence of the investments, arguing that there was no loan, investment, or constructive trust.

¶26. Whether a constructive trust exists is a question of law, which this Court reviews *de novo*.[4] The party advocating a constructive trust must show by clear and convincing proof that a constructive trust is necessary as a matter of law.[5] "The proof must establish the facts and circumstances giving rise to the trust with an extraordinary degree of certainty and

---

[4] ***Davidson v. Davidson***, 667 So. 2d 616, 620 (Miss. 1995) (citing ***Seymour v. Brunswick***, 665 So. 2d 892 (Miss. 1995)).

[5] ***Planters Bank & Trust Co. v. Sklar***, 555 So. 2d 1024, 1034 (Miss. 1990) (citing ***Allgood v. Allgood***, 473 So. 2d 416, 421 (Miss. 1985)).

clarity."[6]  Given this heavy burden, this Court views parol testimony about a constructive trust "with caution."[7]

¶27.    A constructive trust "is a means recognized in our law whereunder one who unfairly holds a property interest may be compelled to convey that interest to another to whom it justly belongs."[8]  But it is well-settled that a constructive trust does not arise simply because a party fails to perform under a contract.[9]

¶28.    The Nelsons claimed the $165,000 transaction never happened.  The chancellor found that it did happen, and the Barriffes provide the only evidence in the record concerning the nature of the transfer of money to Lawson.  From the evidence in the record, the chancellor could have found that the transaction never happened.  But he found that it did happen, that is, the Barriffes did transfer $165,000 to Lawson.

---

[6] *Lipe v. Souther*, 224 Miss. 473, 483, 80 So. 2d 471, 475 (1955) (citing *Stovall v. Stovall*, 218 Miss. 364, 67 So. 2d 391 (1953)).

[7] *Lipe*, 80 So. 2d at 475.

[8] *Allgood*, 473 So. 2d at 421 (citing *Sojourner v. Sojourner*, 247 Miss. 342, 353, 153 So. 2d 803, 807 (1963); *Russell v. Douglas*, 243 Miss. 497, 505-06, 138 So. 2d 730, 734 (1962); *Rimmer v. Austin*, 191 Miss. 664, 668, 4 So. 2d 224, 225 (1941)).

[9] *Sojourner*, 153 So. 2d at 807 (internal citations omitted).

¶29. The chancellor characterized the transfers as a loan, which is a contract.[10] And, although the Barriffes described the $165,000 as an "investment," they never claimed to be partners with Nelson or to own part of the business.[11] According to their testimony, their only expectation was that Nelson would fulfill his promise to provide them two-thirds of the profits after Eugene retired. Thus, the Barriffes' agreement to provide the $165,000 in exchange for Nelson's promise was nothing more than a contract.[12] So the only remedy available to the Barriffes for their $165,000 transfer to Nelson was one for breach of contract.

¶30. We pause here to point out our disagreement with the dissent. Even were we to accept the dissent's view that the new trial was unwarranted, we cannot agree with its conclusion that the issue of breach of contract was not raised in the first trial. In his findings of fact at the conclusion of the first trial, the chancellor found: "The Court finds the $165,000.00 given

---

[10] *But see* **First Money, Inc. v. Frisby**, 369 So. 2d 746, 751 (Miss. 1979) (holding that contract at issue was unenforceable and not a crop loan because there was no agreement as to when the alleged lender would provide money, how much the lender would provide, the interest rate the lender would charge, and if the lender would have any security interest in the crop).

[11] *See, e.g.*, **Hults v. Tillman**, 480 So. 2d 1134, 1143 (Miss. 1985) (noting that actual intent to form a joint venture is essential to finding that parties are joint venturers).

[12] *See* 1 *Williston on Contracts* § 4:8 (4th ed. 2014) ("In practice, an offer contemplating a unilateral contract almost invariably involves an exchange of the offeror's promise for the offeree's act; that is, the offeror is the party who becomes bound as promisor when the contract is formed by acceptance."). *See also* **Sec. & Exch. Comm'n v. W.J. Howey Co.**, 328 U.S. 293, 298, 66 S. Ct. 1100, 1102, 90 L. Ed. 1244 (1946) (quoting **State v. Gopher Tire & Rubber Co.**, 146 Minn. 52, 56, 177 N.W. 937, 938 (1920)) (defining an investment contract as "a contract or scheme for 'the placing of capital or laying out of money in a way intended to secure income or profit from its employment.'").

to Lawson by the Barriffes *was a loan* and not an investment." No citation of authority is necessary for the proposition that a loan indeed is a contract.

¶31. We repeat for emphasis: Other than the Barriffes' testimony that the $165,000 was transferred in exchange for Nelson's promise to provide them two-thirds of the profits, the record is void of any evidence of any other purpose for the transfer. The chancellor certainly had discretion to find that the transfer of money was never made. But, having found it was made, the chancellor's discretion does not stretch so far as to allow him simply to make up a reason for the transfer that is unsupported by evidence in the record. He was required to render an opinion based upon the evidence presented.

¶32. The Nelsons consistently have argued that the Barriffes' claims are barred by the statute of limitations. The statute of limitations on a claim begins to run when the cause of action accrues and becomes enforceable.[13] A party must bring an action to enforce the contract within three years of the breach.[14]

¶33. At the trial, Eugene testified several times that he retired when he turned sixty-five sometime in 2005. By 2005, Lawson already had sold the landfill, and Eugene was entitled to his entire share of the landfill profits. Under Mississippi's three-year statute of limitations for breach of contract, the Barriffes must have filed suit to recover their interest in the landfill within three years of Eugene's retirement. So, even if Eugene retired on December 31, 2005,

---

[13] *Anderson v. LaVere*, 136 So. 3d 404, 411 (Miss. 2014) (citing *Bullard v. Guardian Life Ins. Co. of Am.*, 941 So. 2d 812, 815 (Miss. 2006)).

[14] Miss. Code Ann. § 15-1-49 (Rev. 2012).

11

the latest the Barriffes could have filed suit to enforce their agreement with Lawson was December 31, 2008. Because they waited to file suit until June 2009, the Barriffes' cause of action expired, and Lawson's promise to pay the Barriffes their two-thirds interest became unenforceable.[15] Statutes of limitations are not mere suggestions; parties must bring timely claims or else forfeit their right to seek judicial relief.[16]

¶34. We find no facts in this case support the creation of a constructive trust and that the chancellor erred when he created one for the benefit of the Barriffes. The Barriffes proved nothing more than that Lawson breached a unilateral contract, and the Barriffes did not bring their action for breach of this promise within three years of Eugene's retirement.[17] The chancellor erred in finding a constructive trust, and the Barriffes' breach-of-contract action is barred by the statute of limitation. So, we must reverse the chancellor's ruling on that issue and render judgment in favor of the Nelsons.

### III. The Barriffes are not entitled to an equitable lien on the Nelsons' property.

---

[15] *See* **Morgan v. Stevens**, 989 So. 2d 482, 484 (Miss. Ct. App. 2008) (holding that failure to bring timely action to collect on debt three years and ten months after default extinguished debt).

[16] *See* **Harrison Enters., Inc. v. Trilogy Commc'ns, Inc.**, 818 So. 2d 1088, 1096 (Miss. 2002) (noting that the purposes behind statutes of limitations are "to discourage lawsuits"; "reward the vigilant, not the negligent"; and "to prevent false and stale claims.").

[17] Our opinion should not be read to say there can never be a constructive trust in a case involving a contract. *See* **Sojourner**, 153 So. 2d at 807 (holding that a breach of contract will give rise to a constructive trust only when the other party entered the contract never intending to abide by its terms) (internal citations omitted); *Lipe*, 80 So. 2d at 473-74 (holding that the remedy of a constructive trust could not vary the terms of a written deed).

¶35.   During the trial, the Barriffes testified on numerous occasions that, in exchange for the improvements they made to the apartment, Lawson had agreed to convey the property to them. Lawson disputed this verbal contract. Regardless, the Barriffes' claim fails because they have no written agreement.

¶36.   We review a chancellor's decision to impose an equitable lien *de novo*.[18] "[A]n equitable lien . . . is the right by which a creditor is entitled to obtain satisfaction of his debt by resort to specified property belonging to the debtor, [when] . . . it is clear that the debtor intended to create an encumbrance."[19] But an equitable lien is not appropriate to enforce a contract that otherwise fails to meet the requirements of the statute of frauds.[20] Under Mississippi's statute of frauds, contracts involving the transfer of real property must be in writing.[21]

¶37.   The Barriffes claim they had an oral agreement with Lawson that they could make improvements on his land and that he would transfer the land to them. This alleged contract

---

[18] *See* **Countrywide Home Loans, Inc. v. Parker**, 975 So. 2d 233, 234 (Miss. 2008) (citing **Biglane v. Under the Hill Corp.**, 949 So. 2d 9, 14 (Miss. 2007) ("A chancellor's rulings on questions of law are reviewed de novo.").

[19] **Lindsey v. Lindsey**, 612 So. 2d 376, 379 (Miss. 1992) (quoting **Pincus v. Collins**, 198 Miss. 283, 22 So. 2d 361 (1945)).

[20] *See* **Dobbs v. Bowling**, 339 So. 2d 985, 986 (Miss. 1976) (quoting **Lewis v. Williams**, 186 Miss. 701, 712, 191 So. 479 (1939)) ("[I]f the oral agreement constituted a constructive trust, 'then, we shall have practically abolished the statute of frauds[ ] . . . .'").

[21] Miss. Code Ann. § 15-3-1(c) (Rev. 2012); *see also* **Sharpsburg Farms, Inc. v. Williams**, 363 So. 2d 1350, 1354 (Miss. 1978) ("The principal purpose of the Statute of Frauds . . . is to require the contracting parties to reduce to writing the specific terms of their contract, especially an agreement affecting lands . . . .").

13

fails under the statute of frauds. An equitable lien cannot save a contract that violates the statute of frauds.[22]

¶38. Further, the Barriffes constructed and made improvements to an apartment they knew was on land that belonged to Lawson, so they do not qualify for the protection granted those who have a good-faith—though mistaken—belief that they were making improvements to their own land.[23] Thus, the chancellor erred as a matter of law when he imposed an equitable lien on the Nelsons' property for the value of the improvements the Barriffes made.

## CONCLUSION

¶39. The chancellor did not abuse his discretion when he granted the Nelsons' motion for a new trial. However, the chancellor did err as a matter of law when he imposed a constructive trust for the benefit of the Barriffes and when he imposed an equitable lien on the Nelsons' property. We affirm the parts of the chancellor's judgment granting the motion

---

[22] ***Dobbs***, 339 So. 2d at 986; *see also **Van Sickle v. Keck***, 81 P.2d 707, 710 (N.M. 1938) ("A court of equity will not relieve an individual from the operation of the statute of frauds, which requires that interest in lands be created by an instrument of writing, and impose an equitable lien upon the land in favor of one who makes improvements thereon knowing that the title is in another . . . .") (citing ***Wash. Mkt. Co. v. D.C.***, 172 U.S. 361, 19 S. Ct. 218, 43 L. Ed. 478 (1899); ***Spencer v. Williams***, 170 S.E. 179 (W. Va. 1933); 89 A.L.R. 1451; ***Perry v. Neel***, 252 N.W. 812 (Neb. 1934); ***Thorbahn v. Walker's Estate***, 257 N.W. 892 (Mich. 1934)).

[23] *See **Wilie v. Brooks***, 45 Miss. 542, 548 (1871); ***Cole v. Johnson***, 53 Miss. 94, 99-100 (1876) (noting "[t]he requirement that the party making the improvements 'shall claim the premises under some deed or contract of purchase made or acquired in good faith,' must mean nothing more than an honest belief on his part that he is the true owner."); ***McGee v. Wallis***, 57 Miss. 638, 646 (1880).

14

for new trial and denying the Barriffes' attorneys' fees. In all other respects, we reverse the chancellor's judgment in this case and render judgement in favor of the Nelsons.

¶40.　**ON DIRECT APPEAL: AFFIRMED IN PART, REVERSED IN PART AND RENDERED. ON CROSS-APPEAL: REVERSED AND RENDERED.**

　　**WALLER, C.J., RANDOLPH, P.J., LAMAR AND PIERCE, JJ., CONCUR. COLEMAN, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS AND CHANDLER, JJ. KING, J., NOT PARTICIPATING.**

　　**COLEMAN, JUSTICE, DISSENTING:**

¶41.　In my opinion, the chancellor erred in granting the Nelsons' motion for a new trial, and the chancellor's first judgment, which imposed a constructive trust for the $165,000 the Barriffes gave Lawson for the landfill and a constructive trust for $72,645 for the amount spent constructing the Wildwood apartment, was correct. The majority fails to provide a complete recitation of the relevant facts and fails to apply a manifest error standard of review to the chancellor's findings of facts, then imposes a contract on the parties, although no party, either at trial or on appeal, has claimed that a contract existed. Accordingly, I dissent.

**Facts and Procedural History**

¶42.　In June 2009, Ernie and Eugene Barriffe filed suit against Lawson Nelson and his two sons, David and Dwight, alleging constructive trust, unjust enrichment, and fraudulent transfer. The first trial was held in April 2011. The Barriffes sought compensation for the amount spent constructing the Wildwood apartment, estimated to be $75,000. The Barriffes testified that Lawson had offered them the space inside his metal building to construct an apartment and that he promised to convey the property to them when he died. In addition,

15

the Barriffes claimed they were entitled to two-thirds of the amount of the landfill sale. Ernie and Eugene both testified that they contributed a total of $165,000 to the landfill business. The chancellor found "no proof that the Barriffes acquired a two-thirds interest in Lawson's landfill business." However, he did find evidence that the Barriffes had given Lawson $165,000, and he concluded that the "Barriffes had a reasonable expectation that their $165,000 would be paid back to them." The chancellor held that the Nelsons had been unjustly enriched. He found two constructive trusts, and he held that the ten-year statute of limitations for constructive trusts had not expired. He entered a judgment in favor of the Barriffes in the amount of $237,645.

¶43. The Nelsons filed a motion for reconsideration or for a new trial. The chancellor granted the Nelsons's motion for a new trial and reopened the judgment to allow additional discovery. The trial court conducted the second trial in September 2011. Further testimony was heard from Ernie, Eugene, David, and Dwight, but the testimony added very little, if anything, to the evidence adduced at the first trial. After the second trial, the chancellor concluded that there had been four constructive trusts, but the statute of limitations had expired as to two of them. Based on these findings, the chancellor reduced the award to the Barriffes to $96,221. Both parties appealed the second judgment.

**Discussion**

¶44. The Barriffes assert that the chancellor erred in granting a new trial, and they ask the Court to reverse the second judgment and enforce the original judgment. The Nelsons cross-appealed, contending that both of the chancellor's judgments were wrong and that the

16

Barriffes are not entitled to any relief; they ask the Court to reverse and render. It is my opinion that the chancellor abused his discretion when he granted the Nelsons' motion for a new trial. Further, the chancellor's first judgment in favor of the Barriffes was supported by substantial evidence and, in my opinion, that judgment should be enforced.

**I. Whether the chancellor abused his discretion in granting the Nelsons' motion for a new trial.**

¶45. The grant or denial of a Rule 59 motion for a new trial is reviewed for abuse of discretion. *Rogers v. Morin*, 791 So. 2d 815, 820 (¶ 11) (Miss. 2001). The abuse of discretion standard is highly deferential to the trial court, but this Court has held that "judicial discretion is not boundless[.]" *Douglas v. Burley*, 134 So. 3d 692, 697 (¶ 13) (Miss. 2012). An abuse of discretion occurs when a trial judge exercises his discretion arbitrarily, resulting in a finding or judgment that is "manifestly wrong and against the overwhelming weight of the evidence." *Rogers*, 791 So. 2d at 822 (¶ 22) (quoting *Richardson v. Riley*, 355 So. 2d 667, 668 (Miss. 1978)).

¶46. The majority's analysis of the new trial issue consists of five sentences with no citation to legal authority. (Maj. Op. ¶ 24.) The majority writes that "[t]his is a close call," then admits that the time limits were not unfair and that the chancellor did not enforce them, but goes on hold without further explanation that the chancellor did not abuse his discretion in granting a new trial. *Id.* With all due respect, the analysis is insufficient. While it may be "a close call" – like many issues addressed by this Court – the decision can be made with a complete review of the transcript and the relevant caselaw.

17

¶47. On the second day of the first trial, the chancellor accused the attorneys of not being prepared for trial and, after the attorneys took more than a day to question the first witness, the chancellor limited the time for questioning the remaining witnesses. Mississippi Rule of Evidence 611 provides:

> The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.

Miss. R. Evid. 611(a). Rule 611 "is designed to give trial judges some measure of control over the operation of trials and the smooth flow of the litigation process." *Moore v. Moore*, 757 So. 2d 1043, 1046 (¶ 14) (Miss. Ct. App. 2000).

¶48. In *Moore v. Moore*, the defendant claimed that his due process rights were violated because the trial judge limited the trial to one day. *Id.* at 1046 (¶ 11). The Court of Appeals found no merit to the claim because the defendant knew the time limit from the beginning of trial, he did not object, the defense called seven witnesses, the defendant testified, and there was "no indication in the record . . . that the time limits placed on the trial by the chancellor were problematic." *Id.* at 1046 (¶¶ 12-14). The Court of Appeals said if the defendant's "trial strategy was adversely affected, then a record outlining the adverse effect should have been preserved" for the appellate court to review. *Id.* at 1047 (¶ 14). The Court of Appeals recognized that defendants have "a right to introduce evidence at a hearing[,]" however, "if there is no evidence to present or no proffer as to what would have been presented, then there is no legitimate basis for complaining on appeal about the chancellor's

18

control of evidentiary presentations." *Id.* at 1046 (¶ 13) (quoting *Morreale v. Morreale*, 646 So. 2d 1264, 1270 (Miss. 1994)). *See also Gray v. Pearson*, 797 So. 2d 387, 394 (¶ 29) (Miss. Ct. App. 2001) (court did not overturn chancellor's ruling limiting each side to two hours of trial testimony because appellant did not make a timely objection or make a record of evidence she would have presented without the time limit).

¶49.    In the instant case, although the chancellor gave time limits for three witnesses, he did not adhere strictly to the time limits he set. The attorneys were allowed to exceed the allotted time when they questioned Eugene, and although the chancellor noted the time, he did not instruct them to stop. The chancellor limited the time to ten minutes for each side when the Barriffes called David and Dwight. The Nelsons waived their time to cross-examine both David and Dwight. When the Nelsons called David, they were given forty-five minutes for direct examination; they used only twenty of the allotted forty-five minutes. No time limit was placed on Dwight for the Nelsons' direct examination. The Nelsons did not use all of the time allotted, they did not object to the time limits, and they did not identify any evidence or testimony that they were not able to present. In my opinion, under these specific facts, the chancellor's imposition of a time limit on three witnesses, which he did not enforce, did not amount to a violation of due process, and the chancellor acted within his discretion when he limited the time for questioning witnesses.

¶50.    Rule 59 provides that a new trial may be granted "in an action tried without a jury, for any of the reasons for which rehearings have heretofore been granted in suits in equity in the

19

courts of Mississippi." Miss. R. Civ. P. 59(a)(2). Rule 59 must be read and interpreted in

light of Rule 61, which provides:

> No error in either the admission or the exclusion of evidence and no error in
> any ruling or order or in anything done or omitted by the court or by any of the
> parties is ground for granting a new trial or for setting aside a verdict or for
> vacating, modifying, or otherwise disturbing a judgment or order, unless
> refusal to take such action appears to the court inconsistent with substantial
> justice. The court at every stage of the proceeding must disregard any error or
> defect in the proceeding which does not affect the substantial rights of the
> parties.

Miss. R. Civ. P. 61. Thus, a harmless error in the proceedings that "does not affect the

substantial rights of the parties" is not a sufficient reason for granting a new trial. *Id.*

Applying Rule 59, the Court has held that trial courts have discretion in granting a new trial

if the judge is convinced that (1) "a mistake of law or fact has been made" or (2) "injustice

would attend allowing the judgment to stand." *Mayoza v. Mayoza*, 526 So. 2d 547, 549-50

(Miss. 1988).[24] Neither ground is present here. The only reason ever articulated in the

motion, at the hearing, in the order, and anywhere in the record by the parties or the judge

was the time limitation placed on the witnesses.

---

[24] Courts applying the federal rule have been clear that "Rule 59 is not intended to
allow one party to better its position through the initiative of filing a post-trial motion, rather
it is an opportunity for the court to correct any injustice [that] may have occurred during
trial." *United States v. Schiffer*, 836 F. Supp. 1164, 1169 (E.D. Pa. 1993), *aff'd*, 31 F.3d
1175 (3d Cir. 1994). *See also Brown v. Wright*, 588 F.2d 708, 710 (9th Cir. 1978). Further,
federal courts and other state courts have held that a motion for a new trial should not be
granted on grounds that were not raised at trial, "unless the error was so fundamental that
gross injustice would result." *Lyons v. Jefferson Bank & Trust*, 793 F. Supp. 989, 992 (D.
Colo. 1992). *See also Schiffer*, 836 F. Supp. at 1170; *In Cochran v. Bentley*, 251 S.W.3d
253, 266-67 (Ark. 2007).

¶51.    The chancellor acted within his discretion and did not err by setting time limits for witness testimony that he believed – and the record confirms – was cumulative. The Nelsons did not object to the time limits at trial nor did they provide a proffer of testimony. The Nelsons did not use even half the time allotted for questioning David on direct examination, they waived their time for cross-examining both David and Dwight, and the chancellor did not enforce the time limit for questioning Eugene. The Nelsons were not prejudiced by the time limits, and the limits did not amount to a violation of due process. They had ample time to present their defense and introduce evidence, and they made no proffer showing otherwise. *See* ***Matter of Will of Adams***, 529 So. 2d 611, 614 (Miss. 1988) (Assignment of error failed "due to lack of an appropriate proffer based on the well established principle that proffer must be made on which this Court can make a determination as to whether the testimony could have affected the outcome of the case."). *See also* ***Moore***, 757 So. 2d at 1046 (¶ 14). The Nelsons' motion for a new trial based on the time limits should have been denied. Granting a new trial in the absence of a sufficient reason puts the parties through extra expense and delays finality of the litigation. I would hold that the chancellor abused his discretion in granting the new trial.

**II. Whether the chancellor erred in finding unjust enrichment and a constructive trust as to the Barriffes' investments in the landfill business, and whether the statute of limitations precluded the Barriffes' claim.**

¶52.    Because I would hold that the chancellor erred in granting the new trial, I look at only the findings made after the first trial. At the end of the first trial, the chancellor found that

21

there was no evidence to support that the Barriffes had a two-thirds interest in the landfill business. However, he found that the Barriffes had given Lawson $165,000, which had not been repaid. That is, he found as fact that the money had not been returned and the Nelsons retained possession of it. His finding was made in the context of determining that the Nelsons were unjustly enriched and not, as would support the reasoning of the majority, in the context of whether a contract to repay it existed. The Nelsons were the beneficiaries of that money, and they had been unjustly enriched by that amount. In my opinion, the chancellor's finding of a constructive trust as to the $165,000 investment in the landfill business was supported by substantial evidence.

¶53.   "[O]ur standard of review of findings of fact, including those regarding a constructive trust, is limited in that we must not set aside a chancellor's findings of fact so long as they are supported by substantial credible evidence." ***Davidson v. Davidson***, 667 So. 2d 616, 620 (Miss. 1995). Even if the appellate court may have found otherwise in the original matter, where the chancellor's findings of fact are supported by substantial credible evidence, those findings will not be disturbed on appeal unless they are manifestly wrong, clearly erroneous, or the wrong legal standard was applied. ***City of Picayune v. S. Reg'l Corp.***, 916 So. 2d 510, 518-19 (¶ 22) (Miss. 2005). However, a chancellor's findings regarding the *applicability* of constructive trusts are questions of law, which this Court reviews *de novo*. ***Davidson***, 667 So. 2d at 620. Thus, the application of constructive trusts is a question of law, but the factual findings underlying that application are questions of fact.

**A. The majority's finding of a contract**

22

¶54.    The majority completely disregards the chancellor's findings of fact and makes its own findings, which this Court does not have the authority to do, in order to reach a its chosen conclusion that the parties had a contract.  The parties have not once asserted that a contract existed.  In a glaring twist of legal irony, had the Nelsons argued in the instant appeal that a contract had been formed, the Court quite possibly would have declined to consider the argument, as, on appeal, parties waive matters not presented to the trial court. *Fowler v. White*, 85 So. 3d 287, 293 (¶ 21) (Miss. 2012) (quoting *Triplett v. Mayor and Bd. of Aldermen of Vicksburg*, 758 So. 2d 399, 401 (Miss. 2000) ("This Court has long held that it will not consider matters raised for the first time on appeal.").  Not only does the majority disregard the chancellor's findings of fact, it fails even to mention the standard of review for a chancellor's findings.  This Court has been abundantly clear that findings of fact are left to the trial court; this Court does not have the authority to disturb those findings absent manifest error or unless the findings are against the overwhelming weight of the evidence. *Richardson*, 355 So. 2d at 668.

> The principle of law with which we are concerned has been repeated by this Court many times. It is that where the chancellor was the trier of facts, his findings of fact on conflicting evidence cannot be disturbed by this Court on appeal *unless we can say with reasonable certainty that these findings were manifestly wrong and against the overwhelming weight of the evidence.* Even if this Court disagreed with the lower court on the finding of fact and might have arrived at a different conclusion, we are still bound by the chancellor's findings unless manifestly wrong, as stated above.

*Id.* (emphasis added). It cannot be said that the chancellor's findings are against the overwhelming weight of the evidence or manifestly erroneous.  The majority fails even to

23

mention the standard, which is perhaps why it was able to disregard the chancellor's findings so easily.

¶55.    The chancellor found that the Barriffes had given Lawson $165,000, which had not been repaid.  Therefore, the Nelsons had been unjustly enriched, and the chancellor imposed a constructive trust.  The majority dismisses the chancellor's finding and concludes that "the Barriffes' agreement to provide the $165,000 in exchange for Nelson's promise was nothing more than a contract."  (Maj. Op. ¶ 29.)  However, the existence of a contract is a question of fact, which is to be made by the finder of fact.  75A Am. Jur. 2d *Trial* § 791 (1991).  *See also **Mauldin Co. v. Lee Tractor Co. of Miss., Inc.**,* 920 So. 2d 513, 515 (¶ 8) (Miss. Ct. App. 2006) (quoting ***Hunt v. Coker***, 741 So. 2d 1011, 1014 (¶ 6) (Miss. Ct. App. 1999) ("The existence of a contract is a question of fact that is to be determined by a jury, or a trial judge when a trial is conducted without a jury.")). We have held:

> "Whether a contract exists involves both questions of fact and questions of law." ***Ham Marine, Inc. v. Dresser Indus., Inc.***, 72 F.3d 454, 458 (5th Cir. 1995). However, where the existence of a contract turns on consideration of conflicting evidence, that presents a "question of fact properly presented to, and determined by, the jury." ***Id.*** at 461. "Consequently, unless there was no credible evidence presented which might authorize the verdict, the jury's findings must stand." ***Id.***

***Jackson HMA, LLC v. Morales***, 130 So. 3d 493, 497 (¶ 14) (Miss. 2013).  Here, the chancellor was the finder of fact, rather than a jury.  To say that the instant case presents "conflicting evidence" is a gross understatement.  Therefore, whether a contract existed is a question for the chancellor, not the Supreme Court.

24

¶56.    For a valid contract to exist, the following elements must be present: "(1) two or more contracting parties, (2) consideration, (3) *an agreement that is sufficiently definite*, (4) parties with legal capacity to make a contract, (5) mutual assent, and (6) no legal prohibition precluding contract formation." ***Rotenberry v. Hooker***, 864 So. 2d 266, 270 (¶ 13) (Miss. 2003) (emphasis added) (quoting ***Lanier v. State***, 635 So. 2d 813, 826 (Miss. 1994)). Based on the chancellor's findings, there is no evidence of consideration, a sufficiently definite agreement, or mutual assent. The majority fails to identify terms of the contract or make findings regarding consideration, a sufficiently definite agreement, or mutual assent. The majority does not identify the terms of the agreement, *e.g.*, the time period by which the money was to be paid back and an interest rate. Thus, the majority not only usurped the chancellor's duty to make factual findings, it has done an insufficient job of inserting its own factual findings. Without all of the elements of a contract, which are not present in the record or supported by the chancellor's findings, there can be no contract. Perhaps the lack of such evidence is the reason the parties never argued the existence of a contract.

¶57.    The majority relies on the chancellor's findings after the second trial, where the chancellor seemed to recognize that the Barriffes' investment was in exchange for a two-thirds interest in the landfill business. Relying on those facts, the majority may be correct that the agreement between the Barriffes and Lawson was a contract. However, none of the parties ever argued that they had a contract, and the chancellor did not make any findings about a contract. In the only pronouncement following either trial regarding the credibility of the evidence that the money was given in exchange for a two-thirds interest (in either the

25

business or the profits of the business), the chancellor following the first trial expressly found the evidence that the Barriffes gained an interest in the business *not* to be credible. ***Lowery v. Lowery***, 25 So. 3d 274, 297 (¶ 59) (Miss. 2009) ("A chancellor sits as a fact-finder in resolving factual disputes, and is the sole judge of the credibility of witnesses."). The chancellor found the existence of a constructive trust, and the existence of a contract is a question of fact wholly unaddressed by the court below. Rather than usurping the chancellor's duty and imposing a contract, the majority should remand the case for the chancellor to determine whether a contract existed.

## B. Unjust Enrichment/Constructive Trust

¶58. The Barriffes asserted, and the chancellor found, that a constructive trust was created. Taking all of the evidence and testimony into account and placing great weight on the close relationship between the two siblings, the chancellor concluded that the evidence was sufficient to prove that the Barriffes had given Lawson $165,000, and that the Nelsons had been unjustly enriched because there was no evidence that the Barriffes had been repaid. He held that a constructive trust came into being on March 18, 2002, when the Barriffes conveyed the eighty acres back to Lawson. After the first trial, the chancellor found that the ten-year statute of limitations had not expired when the Barriffes filed suit, and the chancellor awarded the Barriffes $165,000.

¶59. Sufficient evidence supports the chancellor's findings that the Barriffes gave Lawson at least $165,000, which was not repaid, and that the Nelsons have been unjustly enriched by that amount. "[T]he basis for an action for 'unjust enrichment' lies in a promise, which

26

is implied in law, that one will pay to the person entitled thereto [that] which in equity and good conscience is his." *Estate of Johnson v. Adkins*, 513 So. 2d 922, 926 (Miss. 1987) (quoting *Magnolia Fed. Savings & Loan v. Randal Craft Realty*, 342 So. 2d 1308, 1311 (Miss. 1977)). The Court has explained unjust enrichment as follows:

> The doctrine of unjust enrichment or recovery in quasi contract applies to situations where there is no legal contract but where the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain but should deliver to another, the courts imposing a duty to refund the money or the use value of the property to the person to whom in good conscience it ought to belong.

*Dew v. Langford*, 666 So. 2d 739, 745 (Miss. 1995) (quoting *Hans v. Hans*, 482 So. 2d 1117, 1122 (Miss. 1986)). Where unjust enrichment is found, the party making the claim is entitled to restitution. *Powell v. Campbell*, 912 So. 2d 978, 982 (¶ 14) (Miss. 2005); *Estate of Johnson*, 513 So. 2d at 926. In other words, the claiming party should be "restored to his or her original position prior to the loss[.]" *Black's Law Dictionary* 1313 (6th ed. 1990).

¶60. Often, where unjust enrichment is found, a constructive trust is imposed. A constructive trust is an equitable remedy intended to prevent unjust enrichment. *See McNeil v. Hester*, 753 So. 2d 1057, 1064 (¶ 24) (Miss. 2000); *Griffin v. Armana*, 687 So. 2d 1188, 1195 (Miss. 1996); *Allgood v. Allgood*, 473 So. 2d 416, 421-22 (Miss. 1985); *Saulsberry v. Saulsberry*, 223 Miss. 684, 78 So. 2d 758, 760-61 (1955).

> A constructive trust is one that arises by operation of law against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy.

27

*Joel v. Joel*, 43 So. 3d 424, 431 (¶ 23) (Miss. 2010) (quoting *McNeil*, 753 So. 2d at 1064 (¶ 24) (quoting *Saulsberry*, 78 So. 2d at 760)).  "Any transaction may provide an appropriate setting for creating a constructive trust; their forms and varieties are 'practically without limit.'"  *Alvarez v. Coleman*, 642 So. 2d 361, 367 (Miss. 1994) (quoting *Planters Bank & Trust Co. v. Sklar*, 555 So. 2d 1024, 1034 (Miss. 1990)).

¶61.   "[C]lear and convincing evidence is required to establish a constructive trust."  *Davidson*, 667 So. 2d at 620 (citations omitted).  Mississippi law on constructive trusts is well-established.

> Constructive trusts are created for the purpose of preventing unjust enrichment, whereby one unfairly holding a property interest may be compelled to convey that interest to whom it justly belongs. *Allgood v. Allgood*, 473 So. 2d 416 (Miss. 1985). "It is unjust enrichment under cover of the relation of confidence, which puts the court in motion." *Russell v. Douglas*, 243 Miss. 497, 506, 138 So. 2d 730 (1962) (citing *Sinclair v. Purdy*, 235 N.Y. 245, 139 N.E. 255 (1923) (Cardozo, J.)).

*Griffin*, 687 So. 2d at 1195.  "It is the relationship *plus* the abuse of confidence imposed that authorizes a court of equity to construct a trust for the benefit of the party whose confidence has been abused."  *Davidson*, 667 So. 2d at 621 (quoting *Lipe v. Souther*, 224 Miss. 473, 80 So. 2d 471, 475 (1955) (emphasis added)).

¶62.   The chancellor's finding that the facts gave rise to a constructive trust is supported by substantial evidence.  Sufficient evidence existed to find a close relationship between Ernie and Lawson and an abuse of that relationship.  It is undisputed that Lawson and Ernie had a close relationship, and the Barriffes trusted Lawson to take care of them and to handle their money appropriately.  It is also evident that Lawson gave no consideration for the $165,000

28

from the Barriffes – the Barriffes were not repaid, nor did they get an interest in the business, so no consideration existed. The definition of a constructive trust is broad. Constructive trusts are meant to prevent unjust enrichment by one who holds something that in "equity and good conscience" he ought not. *Joel*, 43 So. 3d at 431 (¶ 23); *Griffin*, 687 So. 2d at 1195. I do not have any qualms with saying that the Nelsons have been unjustly enriched and hold property and money that in "equity and good conscience" they ought not. In my opinion, substantial evidence supported the chancellor's imposition of a constructive trust.

### C. Statute of Limitations

¶63.    The statute of limitations for constructive trusts is ten years. Miss. Code Ann. § 15-1-39 (Rev. 2012).[25] The chancellor found that the constructive trust came into being on March 18, 2002, when the Barriffes conveyed the eighty acres back to Lawson; thus, the statute of limitations had not expired when the Barriffes filed suit in 2009. I agree that the statute of limitations had not expired, but I disagree with the chancellor's application of the law as to when the statute of limitations began to run.

¶64.    The statute of limitations for a constructive trust begins to run when one party commits a wrong that results in another party having a claim. *See Thames v. Holcomb*, 230 Miss. 387, 92 So. 2d 548, 551 (1957) (statute of limitations begins to run "from the time the wrong is committed by which the party becomes chargeable by legal implication") (quoting

---

[25] "Bills for relief, in case of the existence of a trust not cognizable by the courts of common law and in all other cases not herein provided for, shall be filed within ten years after the cause thereof shall accrue[.]" Miss. Code Ann. § 15-1-39 (Rev. 2012).

*Cooper v. Cooper*, 61 Miss. 676, 696 (1884)).  In *Thames v. Holcomb*, the Court held: "The repudiation of an implied or constructive trust is not necessary to set the statute of limitation in operation. 'The statute begins to run [in such trusts] from the time the act or acts were committed by which the actor becomes chargeable.'"  *Thames*, 92 So. 2d at 552 (quoting *Rimmer v. Austin*, 191 Miss. 664, 4 So. 2d 224, 225 (1941)).  While repudiation of the trust may not be *necessary* to start the running of the statute of limitations, in some cases, such as here, repudiation may be the act by which the actor becomes chargeable.  Before Lawson's denial that the Barriffes were owed anything, there was no cause of action against which the statute of limitations could run.

¶65.  The original agreement between the Barriffes and Lawson did not create the constructive trust.  The trust came into being when Lawson refused to honor the agreement.  At that point, Lawson became a "trustee" holding property that rightfully belonged to the Barriffes.  The cause of action accrued as to the landfill profit either when Eugene retired (according to their agreement that was when the Barriffes would get their money) or when the Barriffes asked for a deed to the Wildwood property and were told they would not get anything.  Although they did not ask for the landfill money at that time, it was evident that Lawson was not going to give them anything.

¶66.  In *Rankin v. Mark*, 238 Miss. 858, 120 So. 2d 435 (1960), the statute of limitations began to run one day after the alleged promise to convey was made.  In that case, Sol Mark purchased forty acres and half the mineral rights thereon.  *Rankin*, 120 So. 2d at 437.  It was undisputed that Mark was to get his deed for land on the day of the purchase, November 7,

30

1945, but he did not get the deed. *Id.* The Court held that "a cause of action to obtain the deed arose to him the next day, November 8, 1945." *Id.* Because all parties understood that Mark was supposed to get a deed on November 7, 1945, his cause of action accrued and the statute of limitations began running as soon as he did not get the deed. "Statutes of limitation begin to run as soon as there is a cause of action. . . . A cause of action 'accrues' when it comes into existence as an enforceable claim, that is, when the right to sue becomes vested[.]" *Id.* at 437 (internal citations omitted).

¶67.   A similar situation was addressed in *Thames v. Holcomb*. Clyde Holcomb asked his siblings to sign a deed putting an old family house in his name so he could refinance it and avoid foreclosure. *Thames*, 92 So. 2d at 552. Holcomb promised he would make his nine siblings equal heirs to the property after he obtained the loan. *Id.* The siblings agreed, and Holcomb got the loan, but he did not deliver new deeds to his siblings. *Id.* The Court held the siblings' cause of action accrued on the day that the loan was made and the deed of trust was signed, because the siblings expected to get their deeds at that time. *Id.* *Rankin* and *Thames* are distinguishable from the instant case because the parties in those cases knew about the purchase and expected a deed. When they did not get a deed from the one who purchased using their money, the statute of limitations began to run. Such is not the case here. The Barriffes did not expect or want a deed to the landfill property. They did not expect any immediate return from their investments; they believed Lawson was holding their interest in trust for them until Eugene retired. Therefore, at the earliest, the Barriffes' cause of action accrued when Eugene retired in 2005. Alternatively, it could have accrued in 2009

31

when Lawson denied that the Barriffes were entitled to anything. Regardless, the ten-year statute of limitations had not expired when the Barriffes filed suit in 2009.

### III. Whether the chancellor erred in finding unjust enrichment and a constructive trust in regard to the Wildwood apartment, and whether the statute of limitations precluded the Barriffes' claim.

¶68. I would find myself more persuaded by the majority's position on the instant issue if the Barriffes were requesting specific performance of a contract to sell them the land. However, the Barriffes want neither ownership of the land nor to move back into the Wildwood apartment; they want to be compensated for the cost of building it. The chancellor found that the Barriffes spent $72,645 constructing the apartment and that the Nelsons had been unjustly enriched by that amount. He held that a constructive trust came into being in March 2009 when Lawson told the Barriffes he would not give them the deed to the Wildwood Property. After the first trial, the chancellor found that the ten-year statute of limitations had not expired, and he awarded the Barriffes $72,645. In the second judgment, the chancellor held that the statute of limitations barred the claim for the initial expense of building the apartment, and he awarded the Barriffes only $36,211 for the cost of adding the second floor in 2005.

### A. Unjust Enrichment/Constructive Trust

¶69. The law regarding unjust enrichment and constructive trusts is set forth in the previous section. Substantial credible evidence supports the chancellor's finding of a constructive trust as to the Wildwood apartment. It is undisputed that Ernie and Lawson had a close relationship. There is no reason the Barriffes would have built the apartment if they did not

32

think they would be able to stay there. They made additions to the apartment and it became their permanent residence in 2005; they did not have another home. In addition to the Barriffes' testimony that Lawson promised to give them the metal building when he died, Dwight also testified that he knew it was his father's intent to leave the apartment to the Barriffes. However, when the Barriffes asked about the deed in 2009, Lawson denied they were going to get the deed to the property. The Barriffes were constructively evicted, and David and Dwight were unjustly enriched by the value of the apartment. I would hold that the chancellor's imposition of a constructive trust was appropriate, as was his original award of restitution damages in the amount of $72,645, the amount spent constructing the apartment.

¶70.    The majority holds that the "alleged contract fails under the statute of frauds." (Maj. Op. ¶ 37.) First, there is no contract. The Barriffes spent money building an apartment with the belief that they would be able to live out their lives in the apartment. The Barriffes were constructively evicted from that apartment. They do not want to move back to the apartment, and they are not asking that the courts order the Nelsons to sell them the land. They simply want to be reimbursed for the amount spent building the apartment. David and Dwight, now in possession of the property and apartment, have been unjustly enriched by the amount the Barriffes spent building the apartment. It is not a matter of contract; it is unjust enrichment remedied by a constructive trust. Second, we have held that "constructive trusts are not subject to the statute of frauds." *Allred v. Fairchild*, 785 So. 2d 1064, 1070 (¶ 15) (Miss.

33

2001). Thus, where it is determined that a constructive trust was created, the statute of frauds should not be applied. ***Id.*** *See also **Allgood***, 473 So. 2d at 421-22.

### B. Statute of Limitations

¶71.   The date the apartment originally was constructed is not certain. The majority of the evidence indicates that the metal building was built in 1995, so the apartment was constructed at some point thereafter. It is undisputed that the Barriffes made additions to the apartment and moved there permanently in 2005 after Hurricane Katrina. However, the Barriffes did not expect the property to be conveyed to them until Lawson's death. As set forth above, the statute of limitations for a constructive trust begins to run when one party commits a wrong that results in another party having a claim. *See **Thames***, 92 So. 2d at 551; ***Rimmer***, 4 So. 2d at 225. I agree with the chancellor's first judgment, that the constructive trust came into being in March 2009 when the Barriffes asked about the deed and Lawson told them he would not convey the Wildwood Property to them. Before that time, the Barriffes did not have a claim, because they did not expect to receive anything until Lawson's death. The Barriffes filed suit several months after the confrontation with Lawson, which was the action that resulted in the Barriffes having a claim. Therefore, the ten-year statute of limitations had not expired.

¶72.   Substantial credible evidence supports the chancellor's initial finding that the Nelsons were unjustly enriched by the value of the apartment, that a constructive trust as to the Wildwood apartment was established, and that the statute of limitations had not run when the Barriffes filed suit. The Barriffes do not want to move back into the apartment, but the

34

Nelsons have been unjustly enriched by the amount the Barriffes spent constructing it. Therefore, the chancellor's original award of $72,645 for the amount spent constructing the apartment was an equitable award.

## Conclusion

¶73. Substantial credible evidence supported the chancellor's initial findings that the Nelsons were unjustly enriched and that a constructive trust was established between the Barriffes and Lawson as to the Barriffes' investment in the landfill business and the Wildwood apartment, and the statute of limitations had not expired as to either when the Barriffes filed suit. In my opinion, the chancellor's award of $237,645 in restitution damages in the first judgment was equitable. Therefore, I would reverse the chancellor's second judgment and remand the case to the trial court for entry of judgment in favor of the Barriffes in the amount of $237,645, consistent with the chancellor's findings after the first trial.

**KITCHENS AND CHANDLER, JJ., JOIN THIS OPINION.**